## UNITED STATES v. PITT.
### No. 8665.

Circuit Court of Appeals, Third Circuit.
Argued July 10, 1944.
Decided July 27, 1944.

Hayden Covington, of Brooklyn, N. Y., for appellant.

Vincent E. Hull, Asst. U. S. Atty., of Newark, N. J., for appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The appellant, Lester Vernon Pitt, was found guilty on an indictment charging him with failure to obey an order of his Local Board directing him to appear and be inducted for training and service in the United States Army. Instead of reporting for induction as ordered, Pitt went to the Fort Dix Induction Center and left there a letter stating that he would not submit to induction. Earlier, on the same day, he had delivered a similar letter to his Local Board. Both letters stated that Pitt was a minister of religion, a member of the sect known as Jehovah's Witnesses, and therefore entitled to exemption from training and service under the provisions of Section 5(d) of the Selective Training and Service Act of 1940 as amended, 50 U.S.C.A.Appendix § 305.

Pitt's course was patterned closely on that of Billings. See Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737. Pitt asserts that since he had taken a preinduction physical examination now required by the regulations and had received a certificate of fitness showing that he was acceptable for the armed forces, the letter left by him at the Induction Center was the equivalent of Billings' refusal to take the oath of induction. On this interpretation of the Billings decision he contends that the Act is unconstitutional for the reasons hereinafter stated and that he may test its constitutionality and the legality of the action of his Local Board without submitting himself to induction; that he was entitled in effect to try in the court below the sufficiency of the evidence on which his Board classified him as I-A; that his status as a minister of religion should have been determined by the trial judge in the first instance; that, at the least, he was entitled to the opportunity to prove to the jury that he was a minister of religion and that the evidence which he could have presented on this point, if the court had permitted it, would have demonstrated overwhelmingly the justice of his claim to a ministerial status; that thereupon he would have become entitled either to a directed verdict or to acquittal by the jury. He contends finally that he was entitled to prove to the jury as a defense to the indictment the good faith of his belief that as a minister of religion he was exempt from training and service. We may sum up his contentions by stating that he asserts that his Local Board and his Appeal Board in finding him not to be a minister of religion and classifying him I-A disregarded the evidence, and that therefore he was denied due process of law by his Local Board, by his Appeal Board, and by the trial court in that that tribunal did not afford him an opportunity for a judicial review of his classification.

The complete file of the Local Board as to Pitt was introduced into evidence. It shows that Pitt claimed to be a conscientious objector and adverse to any service, whether of a military or a nonmilitary nature. He later abandoned this assertion, stating that he was not a conscientious objector. He asserted that he was entitled to the classification of IV-D as a regular minister of religion. It shows that the Board classified him as a minister of religion upon certification by the Watchtower Bible and Tract Society, Incorporated, that Pitt was a "pioneer." It discloses also that at or about the times that Pitt claimed to be serving as a pioneer or as a minister of religion he was pursuing various secular occupations. These included working as a salesman, operating a filling station and driving a taxicab for hire. The file also demonstrated that Pitt ceased his secular occupation and his work as a "minister of religion", in fact all work of any kind, shortly after he had been classified IV-D as a minister of religion by his Local Board; that he was then removed from the roll of pioneers by the Watchtower Society at his own suggestion but that he did not inform the Board of his change of status. The file shows also that he was then supported in large part by his wife who worked first as a waitress in a diner and later in a munitions plant; that he asserted that he ceased all work because he had asthma which rendered it necessary for him to rest; that physical examinations showed him to be fit for military service. The file shows that Pitt claimed also to be suffering from a ruptured umbilicus and from bronchitis, conditions not apparent from the physical examinations referred to. It appears also from the Board's file that Pitt subsequently

sought and again obtained from the Watch-tower Society the status of a pioneer, but that he did not seek to regain that status until his Board discovered that he was no longer on the pioneer roll and had called him in for questioning. It appears from the transcript of Pitt's hearings before the Board that he was an evasive witness and quite lacking in candor.

■ The selective service agencies rejected Pitt's claim that he was entitled to be classified IV-D as a minister of religion and both his Local Board and his Board of Appeal classified him finally as I-A. The Appeal Agent also in effect rejected his assertion that he was a minister of religion. The actions of these selective service agencies find full support in the evidence which was before them. It is clear also that the Local Board acted fairly and impartially, gave Pitt a full and fair hearing, did not act capriciously or arbitrarily, carefully weighed the evidence relating to his case and accorded him every substantive and procedural right conferred by the Act. Cf. United States v. Peterson, D.C., 53 F.Supp. 760. The Board of Appeal and the Appeal Agent also gave Pitt every right which the Act afforded him.

The appellant contends, however, that the Act is unconstitutional because it does not provide a judicial review of his classification. Conversely, therefore, he objects to the provisions of Section 10 of the Act, 50 U.S.C.A.Appendix, § 310, which provide that the local boards (subject to appeals to the appeal boards and to the President if the decision of an appeal board is not unanimous pursuant to Section 628.2 of the Regulations) shall have the power to determine the right of registrants to exemption from training or service. Section 10 also provides expressly that "The decisions of [the] local boards shall be final * * *" subject to the appeals referred to. These are the provisions which Pitt in effect attacks and which he asserts deny him due process of law.

Though the Act was held to be constitutional by the Circuit Court of Appeals for the Second Circuit in United States v. Herling, 120 F.2d 236, and by this court in United States v. Lambert, 123 F.2d 395, both courts bottoming their decisions on The Selective Draft Law Cases, 1918 (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1916C, 361, Ann.Cas.1918B, 856, and on numerous other authorities, we think it is desirable to discuss the particular constitutional issue which Pitt raises.

■ Section 1(a) of the Act, 50 U.S.C.A.Appendix, § 301(a), consists of a declaration by Congress " * * * that it is imperative to increase and train the personnel of the armed forces of the United States." By Section 1(b) Congress " * * * further declares that in a free society the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system of selective compulsory military training and service." The truth of these declarations is self-evident. As was stated by Mr. Justice Black in Falbo v. United States, 320 U.S. 549, 551, 64 S.Ct. 346, 347, the Selective Training and Service Act was intended and designed by Congress to provide men for the armed forces without delay. This does not mean that the Constitution was suspended for the duration of the emergency, but that the conditions which faced the United States at the time the Act was passed must play a cogent part in determining any question relating to its constitutionality. The means embodied in the Act for the raising of armed forces for the national defense bear a real and substantial relationship to the danger which had materialized with great rapidity upon the horizon of our national life. Cf. Jacobson v. Massachusetts, 197 U.S. 11, 31, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765. If, as the appellant contends, the classification of every registrant is to be submitted to trial by jury under a plea of not guilty to an indictment, the validity of classifications in many instances could not be settled until their determination by the United States Courts of Appeals and in some cases by the Supreme Court itself. Every registrant who desired to avoid military service would avail himself of a right to test his classification by a jury trial. Interminable delays would ensue inevitably and the equality of service and sacrifice contemplated by Congress when it passed the Act would be destroyed. We entertain no doubt that this was the reason Congress saw fit to embody in Section 10 the flat statement that the decisions of the local boards should be final subject to the appeals provided by the statute, and did not see fit to interpose between the registrant and the selective service agencies express provision for a judicial review.

■ The power to enforce the Act is lodged largely in the hands of citizens

resident in each county of the several States. Section 10 provides that the members of the boards shall be civilians and that the members of the local boards shall reside in the county or political subdivision in which the board of which they are members has jurisdiction. Every male person in the United States within the age limits specified by the Act is required to register and, with certain exceptions, is subject to induction into the armed forces or employment in work of public importance. See Sections 2 and 3, 50 U.S.C.A. Appendix, §§ 302, 303. Safeguards were embodied in the statute in order to assure fair classifications and to prevent discrimination or the operation of prejudice. For example Section 4, 50 U.S.C.A.Appendix § 304, provides that the Act shall be administered without discrimination against any person on account of race and color. Section 5(d) grants exemption for regular or duly ordained ministers of religion and Section 5(g) exempts conscientious objectors from combatant service. Adequate and efficient rules and regulations for carrying out the purposes of the Act and in particular for safeguarding the rights of the individual registrant have been promulgated by the President pursuant to the authority conferred upon him by Section 10. Section 623.2 of the Regulations is typical of the care required of local board in deciding the classifications of registrants. It provides that no information in respect to any registrant may be considered by a local board unless it is reduced to writing and placed in the file of the registrant. The registrant may request the opportunity for a personal appearance before his local board. Section 625.1(b) of the Regulations provides, however, that no person other than the registrant may appear in person before a local board. This is in effect a denial of the right to be represented by counsel before the Selective Service agencies. While a denial of the right to counsel in a judicial proceeding would constitute a denial of due process, the proceedings before the selective service agencies are not within that category. It will be observed moreover that while Pitt made two personal appearances before his Local Board, he at no time requested the Board to permit counsel to

appear on his behalf. He does not assert that his lack of counsel is evidence of denial of due process.

Section 10 provides for appeals from the local boards to boards of appeal, and, from the latter under the circumstances stated, to the President.* The right of a registrant to appeal his classification to an appeal board is absolute and unconditional. The boards of appeal in substance must dispose of each case on the record sent to them by each local board and the local boards are admonished to refrain from expressions of opinion or argument in support of their decisions. See Section 627.13(b) of the Regulations. An appeal board is bound in nowise to award to the registrant the classification given to him by his local board. In fact, an appeal board must hear and dispose of each case de novo in the same manner as must an appellate tribunal on an appeal in admiralty, though it may not pass on the physical condition of the registrant. See Section 627.26(a) of the Regulations. Each appeal board therefore independently imposes a classification upon a registrant without regard for that which was given him by his local board. Moreover the classification of the appeal board supersedes that of the local board. A registrant may not appear before an appeal board either in person or by counsel, but again it should be pointed out that Pitt does not allege that this constitutes a denial of due process of law. Many other safeguards are thrown by the Regulations about the operation and application of the Act but brevity forbids their recital in this opinion.

▮ The proceedings before the local boards and the appeal boards are informal, stripped of the panoply of formal judicial tribunals. The local boards are composed of persons who are or should be familiar with conditions in the county in which they serve. Frequently they know the registrant and certainly may not be deemed to be unaware of the problems which confront him. The registrant has the opportunity, if he seeks it, to sit down with the members of his local board and discuss fully with them his status or his claim for exemption. We doubt if a better, fairer method could be devised to meet the requirement of raising armed forces in an emergency. We are of

---

* The action of the Appeal Board, like that of the Local Board, in classifying Pitt I-A was unanimous. Pitt, therefore, had no right of appeal to the President under the Act and the Regulations. The Appeal Agent in substance reached a like conclusion.

the opinion, therefore, that the provisions of the Act afford adequate protection for the rights of the individual registrant, that they afford him due process of law, and that the Act is constitutional in all respects.

We have stated that the selective service agencies accorded Pitt every right to which he was entitled under the Act, that these agencies did not act capriciously or arbitrarily and that their decisions were in accordance with the evidence. If this had not been so, the question would arise under the rulings of the Falbo and Billings cases as to when and where and how a registrant could raise as a defense to an induction order of his local board a failure to accord him the rights guaranteed to him under the Act, such failure in itself constituting a denial of due process of law. This question is not presently before us. Cf. Ex parte Catanzaro, 3 Cir., 138 F.2d 100, 102, certiorari denied 321 U.S. 793, 64 S.Ct. 789; Ex parte Stanziale, 3 Cir., 138 F.2d 312, certiorari denied Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267.

We must reject also the contention that the court itself should have determined the correctness of Pitt's classification. There is no authority for such a proposition in the Act; none is cited in the appellant's brief and we know of no precedent which would sustain such a view. If the appellant's contention were correct, the validity of the classification of a registrant who had been indicted for failure to obey an order of his local board would become a question of law and might remain open until the Supreme Court itself had determined the issue.

Whether Pitt acted in good faith in asserting that he was a minister of religion was a question to be determined by the Boards objectively from the evidence before them. Apparent good faith or lack of it on the part of a registrant in professing to be a minister of religion is an element which may be considered by the selective service agencies; but even if a registrant possesses the sincere belief that he is a minister of religion and could prove it, that belief alone could not qualify him for exemption as a regular or ordained minister of religion. As we have stated the determination of Pitt's status was confided to the Boards by Congress under Section 10 of the Act.

We have examined the entire record. We perceive no error therein. The charge of the learned trial judge was adequate and fair. On the entire record at the close of the appellant's case the only major question remaining for the jury was whether the appellant had knowingly violated the induction order of his Local Board. The circumstances of this case bring it no further within the ambit of the Billings decision than indicated. The effect of Billings v. Truesdell on Falbo v. United States, if any there be, is not presently before us.

The judgment of conviction is affirmed.