**UNITED STATES of America**
v.
Larry Deane STEPLER.
Crim. No. 18959.

United States District Court
E. D. Pennsylvania.
June 12, 1957.

100

Harold K. Wood, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

CLARY, District Judge.

Defendant Larry Deane Stepler was charged in the above Indictment with knowingly failing and neglecting to perform a duty imposed upon him by the provisions of the rules and regulations of the Selective Service Act of 1948, as amended by the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 451 et seq., in that he failed and neglected to obey an Order of Local Board Number 72, Chambersburg, Pennsylvania, to report to the Norristown State Hospital, Norristown, Pennsylvania, to perform civilian work contributing to the maintenance of the national health, safety or interest, in lieu of induction; in violation of Title 50 U.S.C.A. Appendix, §§ 456(j) and 462.

The case was tried before the Court to a jury and on April 4, 1957 the jury returned a verdict of guilty. Defendant's counsel filed a motion for judgment of acquittal only, briefs were submitted and oral argument had thereon, and the motion is now before the Court for decision.

The entire Draft Board file was presented in evidence in this case and the following facts appear therein. In his classification questionnaire of December 7, 1950, the defendant indicated he was working as a bricklayer for $1.75 per hour and was working at that trade an average of 40 hours per week. In its letter of May 31, 1951 to the defendant the Local Board applied the proper statutory standard for determining a ministerial classification, noting that it must be "as a vocation". The Board's further letter of August 13, 1951 to the State Headquarters Selective Service System again applied the correct standard. In defendant's letter of September 12, 1952 to the Board he stated that he was employed as a full time minister, whereas, the Local Board in its letter of November 19, 1952 to the State Appeal Board noted that he was working on a construction project. In the Department of Justice report of April 16, 1953 to the State Appeal Board it was again noted that the defendant was employed 40 hours per week in secular employment and 25 hours per week as a minister and recommended a I-O classification, which recommendation was followed by the Appeal Board. Defendant again wrote on May 14, 1953 to the Local Board notifying them of his ordination and appointment as a "Pioneer Minister" on March 15, 1952. On the 15th day of May, 1953, defendant was permitted by the Local Board to personally take and review his entire file. The Government Appeal Agent in his letter of May 20, 1953 to the Local Board again applied the correct ministerial standard, and he also noted that the 40 hours per week secular work agreed with the Local Board's I-O classification, and declined to appeal to the Director of Selective Service.

It is at this point that defendant's counsel raises three questions which have a bearing upon the disposition of this motion. The first is that the letter,

which will be immediately hereafter referred to, changed the status of the defendant so that the Board had to reopen the case. The second is that the defendant was not given a copy of his F.B.I. file, which will be discussed later. The third is that the Board used an improper and illegal standard in determining whether or not the defendant was entitled to a ministerial classification.

In a letter of April 28, 1954 from the State Headquarters of the Selective Service System to the Local Board in respect of defendant's case the following was noted: "And it is requested that his classification be reopened and considered anew under section 1625.3(a) in view of the apparent change in his status which resulted when he received his Pioneer appointment. * * * Should it be your determination that the registrant does not qualify for the classification claimed, it is suggested that a statement be put in the file to evidence the reason or reasons for your determination. The preceding remark is not made to influence your board, but merely as a precaution that the record may be complete. If the registrant's classification should remain Class I–O *if it is considered by the local board after a personal appearance,* and after consideration by the appeal board, it will not be necessary to again process the case under section 1660.20 of the regulations. Please notify this headquarters of your board's determination." (Emphasis supplied.)

In 32 C.F.R. section 1625.3 the circumstances under which a registrant's classification shall be reopened and considered anew reads as follows:

"The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service * * * ."

A fair and unbiased reading of the letter of April 28, 1954 will disclose the following language: "if it is considered by the local board after a personal appearance." It is completely self-evident that if the letter should be considered a request, as such, under the wording of section 1625.3, the Board would be compelled to reopen the case. The entire letter when viewed as a whole demonstrates that the letter was not considered by the writer as a "request to reopen" within the mandatory provisions of the statute but was rather in the nature of a suggestion, calling attention to the Local Board of a situation in which they might or might not decide properly to open the case.

Counsel for defendant places great reliance upon the case of United States v. Packer, 2 Cir., 1952, 200 F.2d 540, and argued strenuously that the decision in that case was conclusive on the Court in this case. He failed, however, to disclose to the Court that that case was reversed sub nominee. United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417.

Two additional facts should be noted at this point. First, the letter in the Packer case was worded entirely different from the one present in this case and, secondly, the subsequent action of the Local Board in this case completely disposes of any apparent unfairness or lack of consideration.

On May 24, 1954 Stepler personally appeared before the Local Board and admitted that he earned his living as a stone mason, making $100 for a full week, the number of hours worked in a given week depending upon the weather, and that he earned from secular employment $2,000 in the prior twelve months. At the trial he stated his yearly earnings were $3,000 or more.

With the personal appearance of the defendant before the Local Board it is the opinion of the Court that even if the letter of April 28, 1954 might possibly be considered as "a request" to reopen, certainly the request was complied with. The Board, after the above referred to interview, wrote to the State Director and noted that "having heard these answers the board still feels Stepler should remain in Class I–O". It is obvious that such a conclusion did involve a re-evaluation based on the statements made at the personal appearance.

This opinion is further buttressed by the letter of State Headquarters, dated May 28, 1954, in which it stated that proper classification of the defendant "had been considered by the board". On June 18, 1954 the Board stated its reasons for refusing the 4–D classification and included among them were the following:

"1. A member of Jehovah's Witnesses does not qualify for a 4–D classification for the reason that he does not have the training and qualifications of an ordained minister."

"7. At no place in the registrant's file, nor during his last personal appearance, is there anything that would convince us that this registrant is entitled to the classification of a minister of religion, or of a divinity student (this statement is based on Local Board Advice No. 287, issued 2 June 1954)."

Under the circumstances, the Board had before it sufficient evidence for the classification. Defendant appealed his I–O classification on June 10, 1954, and on August 19, 1954 he was again classified I–O by the Appeal Board.

Furthermore, if there was any misapplication of the standard as to what constitutes a minister in defendant's hearing before the Local Board it is wholly immaterial in view of the Appeal Board's ultimate classification and subsequent disposition of the case. Ayers v. United States, 9 Cir., 1956, 240 F.2d 802, certiorari denied, 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548; Capehart v. United States, 4 Cir., 1956, 237 F.2d 388, 389, 390, certiorari denied, 1957, 352 U.S. 971, 77 S.Ct. 363, 1 L.Ed.2d 324; United States v. Chodorski, 7 Cir., 1956, 240 F.2d 590.

In a letter of September 14, 1954 to the Local Board from State Headquarters it was noted that the file had been recently considered by the Middle District Appeal Board and that "This action evidences the *completion of the reopening* of the registrant's classification, as requested in our letter of April 28, 1954." (Emphasis supplied.) It then asked the Board to consider the determination to order the defendant to perform civilian work at the Norristown State Hospital, and if still in agreement with said determination to make arrangements with State Headquarters for the carrying out of such an order.

Again by letter of September 28, 1954 to State Headquarters the Board noted that it had followed the State's request and again determined that the defendant should be ordered to perform civilian work.

On November 17, 1954, State Headquarters returned the file noting that "It has been commented that an examination of the cover sheet discloses that the local board has denied the registrant's ministerial claim on a basis which is not in accord with the law and the regulations. Therefore, the file should be further considered by the Local Board."

That the Local Board had further considered it is evidenced by its letter of November 18, 1954 to State Headquarters. After discussion it decided not to reopen the defendant's classification "on the basis that he does not qualify for a 4–D under Section 1622.43 of Selective Service Regulations."

Section 16(3) of Title 32, C.F.R. Chapter XVI, Section 1622.43(b), as interpreted by the Supreme Court in Dickinson v. United States, 1953, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132, states:

"Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring the registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption."

On December 29, 1954, State Headquarters acknowledged notification of the action taken in accordance with its letter

of April 28, 1954 and asked the Board to forward the defendant's file to State Headquarters.

The next step was a letter of January 28, 1955 to the National Headquarters in Washington, D. C. from the State Headquarters noting that "The fact that the registrant's claim for a ministerial status had been denied on a basis which is not in accordance with the law and regulations was brought to the attention of the local board. The local board discussed this case at its meeting of November 17, 1954, at which time no action was taken to reopen and consider the registrant's classification anew, since it was the opinion of the board that the registrant *does not qualify for a IV–D classification under section 1622.43 of the regulations.* It is requested that the necessary approval under section 1660.20(d) of the regulations be granted to order the registrant to report for civilian work if such action is deemed appropriate by your headquarters." (Emphasis supplied.) See Reap v. Shambora, 5 Cir., 1957, 241 F.2d 803, 807.

 It is quite obvious that if there was, and the Court does not believe there was, any mistaken belief as to the proper standard to be used in evaluating the objective facts before the Board, such mistaken belief had been corrected at this stage of the proceedings. See Bradshaw v. United States, 10 Cir., 1957, 242 F.2d 180; Reed v. United States, 9 Cir., 1953, 205 F.2d 216, certiorari denied, 346 U.S. 908, 74 S.Ct. 238, 98 L.Ed. 406; United States v. Pitt, 3 Cir., 1944, 144 F.2d 169. It is apparent from a study of the objective facts of the case that the Local Board had a proper basis in fact for the classification and that it was not arbitrary or capricious, nor had it been arrived at on the basis of suspicion and/or prejudice. Compare Witmer v. United States, 1955, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428, and United States v. Pitt, 3 Cir., 1944, 144 F.2d 169, 171, 173, *with* cases where there was no basis in fact for the refusal to grant the ministerial exemption such as Dickin-son v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132, and United States v. Kose, D.C., 106 F.Supp. 433.

On March 17, 1955, on the basis of the objective facts determined both by the Local Board and the State Headquarters, the National Headquarters approved the order of the Local Board requiring the defendant to perform hospital work. It is entirely clear from the record that from this point on the Local Board proceeded properly to order the defendant to report for hospital work and that he knowingly refused to obey the order of the Local Board. It is quite illuminating, at least to the Court in this instance, that before anything in the nature of instituting criminal proceedings was done, that on the 18th day of May, 1955, State Headquarters, in returning the file to National Headquarters, referred to a statement dated May 12, 1955 of the Local Board that on the 18th day of November, 1954, when the last refusal of the Local Board to reopen defendant's classification was had, it was thoroughly understood by members of the Board that certain members of Jehovah's Witnesses do meet the requirements of the regulations in regard to Class IV–D classification and that recognizing such the Board did not feel that this particular registrant was entitled to that classification. Compare United States v. Pitt, 3 Cir., 1944, 144 F.2d 169, 173, with United States v. Hurt, 3 Cir., 244 F.2d 46, and with United States v. Kose, D.C., 106 F.Supp. 433.

 Counsel for the defendant argues that such action was in preparation for this criminal prosecution. I do not so regard it. A review of the Local Board's file finds ample support in fact for the classification as made. The question whether there was a basis in fact in the file was submitted to the jury and the determination went against the defendant; the jury's finding that defendant knowingly refused to obey a proper order of the Local Board contrary to statute and regulations is amply supported by the evidence. Cox v. United States, 1947,

332 U.S. 442, 452, 453, 68 S.Ct. 115, 92 L.Ed. 59.

██ The only further point which needs passing comment is the claim that defendant was not furnished with a summary of the F.B.I. investigation. Although defendant was in written communication with the General Counsel for Jehovah's Witnesses, one Covington, it does not appear that he ever asked for any such summary. Further, the record clearly indicates that there was nothing in the F.B.I. file which was in the slightest degree derogatory to the defendant. On the contrary, the letter of the Attorney General to the Appeal Board in which the recommendation of classification to I–O was made states unequivocally that there was nothing in the F.B.I. file in the slightest degree derogatory to this defendant. In fact, such was brought out and argued to the jury by counsel for the defendant. At the time that defendant looked through his entire file he had an opportunity to see everything that the Local Board had in its file and there clearly has been shown no prejudice to the defendant in this case in that regard. Under the circumstances, I do not feel that the defendant has been denied due process of law. United States v. Nugent decided together with United States v. Packer, 1953, 346 U.S. 1, at pages 5 and 6 and note 10, 73 S.Ct. 991, at pages 994 and 995, 97 L.Ed. 1417; Bradshaw v. United States, 10 Cir., 1957, 242 F.2d 180, 188, 189.

Defendant's counsel, after the rendition of the verdict of guilty, made an oral motion for a new trial but filed no written motion with reasons in support thereof. Based on the above facts and for the reasons set forth above, the Court enters the following

### Order

And Now, to wit, this 12th day of June, 1957, defendant's motions for a new trial and for judgment of acquittal be and they are hereby Denied.