**UNITED STATES of America,
Plaintiff,**

v.

**Pedro Lucas MACHADO, Defendant.**

**Crim. No. 42692.**

United States District Court

N. D. California.

Nov. 21, 1969.

Herzstein, Maier & Carey, Paul Maier, San Francisco, Cal., for defendant.

Cecil F. Poole, U. S. Atty., F. Steele Langford, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

## MEMORANDUM OPINION GRANTING MOTION FOR JUDGMENT OF ACQUITTAL

ZIRPOLI, District Judge.

### I. FACTUAL SETTING.

Defendant, Pedro Lucas Machado, is charged with refusal to submit to induction. He raises in his defense the fact that the draft board which classified him I–A and issued his induction order did not comply with 32 C.F.R. 1604.52(c), which states in its pertinent part the following: "The members of local boards * * * shall also, if at all practicable, be residents of the area in which their local board has jurisdiction."

The board involved herein is Local Board No. 65, the same board that was held to be improperly constituted four months ago in United States v. Beltran, No. 42330, (N.D.Calif. July 11, 1969), 306 F.Supp. 385. The government has stipulated that three of the five members of Local Board No. 65 which serves one-half of Monterey County live outside the jurisdictional boundaries of that board. The defense relies on Beltran and United States v. DeMarco, No. 42377 (N.D.Calif. July 30, 1969), in its motion for judgment of acquittal. The government points to the contrary cases of United States v. Nussbaum, 306 F.Supp. 66 (N.D.Calif. October 22, 1969), and United States v. Kaul, 305 F.Supp. 829 (N.D.Calif. October 28, 1969), which relies on Nussbaum.[1] The court has given reconsideration to its decision in DeMarco and has given close attention to the arguments concerning collateral attack. For the reasons to be set out below the court has decided that its initial determination in DeMarco was correct.

### II. MANDATORY NATURE OF 32 C.F.R. 1604.52(c).

Nussbaum raises two arguments: (1) that Reg. 1604.52(c) is discretionary, not mandatory; (2) that even if the regula-

---

1. The court is aware that Nussbaum is presently on appeal and it is hoped that the United States Court of Appeals will soon resolve this issue for further guidance of the court.

tion is mandatory it cannot be raised as a collateral attack in the criminal trial. A refinement of the second point is that a challenge to the draft board's composition must be brought in a quo warranto "direct" attack. When discussing the mandatory-discretionary issue *Nussbaum* and the government in the present case point out that the regulation states an *area*-wide residency requirement, while the statute states a *county*-wide residency requirement. They argue that compliance with the statute is sufficient. This theory flies in the face of numerous selective service cases in which the courts held that a board's failure to comply with the *regulations* was a violation of due process. See Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968) (failure to give registrant an Armed Forces Security Questionnaire); Briggs v. United States, 397 F.2d 370 (9th Cir. 1968) (failure to give a pre-induction physical); Brede v. United States, 396 F.2d 155, modified on rehearing 400 F.2d 599 (9th Cir. 1968) (failure to be ordered for alternative service by a meeting of the local board); Boswell v. United States, 390 F.2d 181 (9th Cir. 1968) (failure to issue a form 150).

The second point argued is that the regulation's phrase "if at all practicable" shows the flexibility of the requirement and "suggests that * * * the additional requirement to be, not mandatory, but directory only." *Nussbaum*, at 68. However, the phrase in question only modifies the statement "members * * * who shall [also], if at all practicable, be residents of the area * * *." If in fact members of that area can serve as a practical matter, then the phrase sheds no light whatsoever on whether this requirement is mandatory or discretionary. Furthermore, it is inconceivable that in the area served by Local Board No. 65, which covers one-half of Monterey County including Carmel, Pacific Grove, Seaside, King City and Monterey, it is not practicable to find five qualified persons who live in that area.

■ Looking to the regulation itself one sees that it uses the word "shall", not "may." "Shall" has been traditionally interpreted as a mandatory direction.

"The word 'shall' is ordinarily imperative, of similar effect and import with the word 'must', and inconsistent with the idea of discretion. 82 C.J.S. Statutes § 380, at pp. 877–882." Pittman Construction Co. v. Housing Authority of Opelousas, 167 F.Supp. 517, 523 (W.D.La. 1958). See *e. g.*, Stanfield v. Swenson, 381 F.2d 755 (8th Cir. 1967); In re National Mills, 133 F.2d 604 (7th Cir. 1943).

■ A mandatory interpretation of Sec. 1604.52(c) is also consistent with the policy of the Selective Service System. Four basic assumptions of this system underline that policy. First, there is the doctrine that local board members are neighbors of the registrant. See Ayers v. United States, 240 F.2d 802, 809 (9th Cir. 1956); Knox v. United States, 200 F.2d 398, 402 (9th Cir. 1952). General Hershey urged this policy in front of Congress when he stated "the choice (of who is to serve) is being made by the neighbors of the man * * *."[2] And in its budget justification for fiscal 1967, Selective Service characterized the local boards as "little groups of neighbors."[3]

The second assumption is that the local board members are responsive to the community and would act under the "continuous observation of all other members of the community."[4]

The third assumption is that the due process constitutional guarantees and

2. Hearings before the Senate Military Affairs Committee on S. 4164, 76th Cong., 3d Sess. 384 (1940).

3. See Report of the National Advisory Commission on Selective Service, at 20 (1967).

4. 86 Cong.Rec. 11678 (1940) (remarks of Rep. Mott).

those provided for by the Administrative Procedure Act are not necessary to the local board proceedings because of the individualized treatment the registrant receives and the informality of the board.[5]

These policy reasons have also been used by the courts to refuse the right to counsel at the personal appearance.[6] In light of the courts' acceptance of the Selective Service's self-proclaimed model of "little groups of neighbors," as well as the use of the word "shall" instead of "may", it would seem that a mandatory interpretation of Sec. 1604.52(c) is compelled.

Since the regulation is mandatory, failure to follow it is a violation of due process. See Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Smith v. Resor, 406 F.2d 141, 145 (2nd Cir. 1969); United States v. Stiles, 169 F.2d 455 (3rd Cir. 1948); United States v. Eisdorfer, 299 F.Supp. 975, 987 (E.D.N.Y.1969); United States v. Walsh, 279 F.Supp. 115 (D.Conn. 1968); United States v. Schwartz, 143 F.Supp. 639, 640 (E.D.N.Y.1956). Some courts have required in certain situations a showing of actual prejudice before holding that a regulation violates due process. In the present context such a doctrine would work a fundamental unfairness to the defendant, for it is virtually impossible to show that a different result would have followed if the board had been properly constituted. And yet, given the broad powers of discretion in the local board[7] it is quite likely that prejudice did or could result. Given that element of discretion and the policy behind the regulation the words of the court in United States v. Dale, 304 F.

Supp. 1278 (District of New Hampshire July 31, 1969), are relevant:

There is no evidence that the defendant's classification was in any manner based upon prejudice * * *. In this situation * * * the *absence of evidence of prejudice does not outweigh the obvious intent of the regulation* and the seriousness with which it was *undoubtedly drafted. * * *"* (Emphasis supplied).

Also as the court succinctly said in Oshatz v. United States, 404 F.2d 9, 12 (9th Cir. 1968): "[i]n this case Oshatz might not stand convicted of a felony had he been given the opportunity to execute the loyalty questionnaire. * * [t]hat is sufficient prejudice to require reversal." The effect of the decision herein is to remind the Selective Service System that the regulations apply to its operations as well as to the conduct of the registrant.

## III. QUO WARRANTO DOES NOT LIE.

Even though the regulation is mandatory *Nussbaum* holds that an attack on the failure of the board to comply with Reg. 1604.52(c) can only be raised by a "direct" quo warranto proceeding. Historically quo warranto was "the prerogative writ by which the government (could) call upon any person to show by what warrant he holds a public office or exercises a public franchise." Newman v. United States ex rel. Frizzell, 238 U.S. 537, 545–546, 35 S.Ct. 881, 883, 59 L.Ed. 1446 (1915); Wirtz v. National Maritime Union of America, 399 F.2d 544, 548 (2nd Cir. 1968).

Since there are no selective service cases prior to *Nussbaum* discussing quo warranto it is necessary to look at the traditional cases in this area. These

5. See United States v. Pitt, 144 F.2d 169, 172–173 (3d Cir. 1944); A. Ginger, The New Draft Law National Lawyers Guild 4th Ed., at 235:81–89e (1969).

6. See United States v. Capson, 347 F.2d 959 (10th Cir. 1965); Niznik v. United States, 173 F.2d 328 (6th Cir. 1949);

United States v. Pitt, 144 F.2d 169 (3d Cir. 1944).

7. This wide scope of discretion has led to significant variation in classification of persons in like circumstances. See Report of the National Advisory Commission on Selective Service 83–6 (1967).

cases break down into two major divisions; those where there has been an alleged usurpation of a public office and those where a private party alleges that he has title to a position held by another.

The use of quo warranto to challenge the usurpation of public office is typified by corporate and habeas corpus cases. The first general situation deals with corporations and corporate office. Quo warranto is often used to challenge right to hold office in a corporation. For example, in Bill v. Carr, D.C., 88 F.Supp. 578 (Conn.1949), a former director of the Northeastern Insurance Company requested that the election of the present directors be declared null and void. The case of Community Blood Bank of Kansas City Area, Inc. v. FTC, 405 F.2d 1011, 1019 (8th Cir. 1969), points out that when corporations organized under nonprofit laws actually engage in profit-making activities they may lose their charter through quo warranto proceedings. However, because the franchises of unincorporated associations do not depend on the state quo warranto is inappropriate. See Wirtz v. National Maritime Union of America, 399 F.2d 544, 546 (2nd Cir. 1968).

The habeas corpus cases rely on Ex Parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899). In *Ward* the Court held that a person already convicted cannot, in a later habeas corpus proceeding, attack the validity of the title of the judge who tried him. In a similar case attacking the title of the state attorney the court held that the title of a person acting under color of law could not be challenged by a collateral habeas corpus proceeding. United States ex rel. Doss v. Lindsley, 148 F.2d 22, 158 A.L.R. 525 (7th Cir. 1945).

The cases in which one person challenges the title of another are typified by Blackburn v. O'Brien, 289 F.Supp. 289 (W.D.Va.1968), in which one person alleged that she had title to the position held by another. Quo warranto was held proper as plaintiff's action was "essentially one to determine the rights

of both the claimant and the appointee to the postmastership in question. Such a proceeding sounds in quo warranto, the classic remedy by which to try the title to public office."

■ Every one of the above situations entails a civil suit. At no time has the doctrine of quo warranto been used to deny a person, in his criminal trial, the right to challenge an element of the prosecution's case. Given this history one should be uneasy about applying quo warranto to a selective service criminal case. In the case before the court the United States has initiated the suit; it is not a civil suit brought in the name of the registrant. Defendant Machado does not seek to be installed as a member of Board No. 65. Defendant Machado does not even seek to oust the present members of Board No. 65. His concern is defending against a criminal charge by forcing the government to prove all the elements of its case. An essential element of that case is a proper induction order. Regulatory compliance is a necessary element to prove a proper induction notice. Defendant Machado is not interested in trying title to office or putting himself into office, he is only demanding the proper criminal procedure, that is, the proof of each and every element of the charge. Quo warranto is inapplicable to such a proceeding.

## IV. DIRECT VERSUS COLLATERAL ATTACK.

■ Intertwined with the notion of quo warranto is the concept of direct versus collateral attack. Although no draft cases have discussed quo warranto, a few of them have said one cannot make a collateral attack on the board's actions in one's criminal defense. Accepting the semantical distinction between "direct" and "collateral" leads one quickly into a quagmire. *Nussbaum* and the cases it relies on provide no way out of that quagmire, rather, they sink one deeper into the confusion. Two of the four cases relied upon by *Nussbaum* assume without argument that an attack on racial compo-

sition of a draft board is collateral [8] and therefore they rely on the old habeas corpus cases such as *Ex Parte Ward* and *Lindsley*. The other two cases [9] cited by *Nussbaum* give only cursory treatment to the attack on draft boards for improper residency, relying almost exclusively on the same traditional cases dealing with quo warranto. These draft cases fail to analyze the charge against the defendant, that is, the refusal to submit to induction. A person cannot be judged guilty of such charge unless there is a valid induction order. A prerequisite to a proper induction order is procedural due process. See Miller v. United States, 388 F.2d 973 (9th Cir. Dec. 29, 1967); United States v. Stiles, 169 F.2d 455 (3rd Cir. 1948).[10] Therefore, draft board compliance with the applicable selective service regulations is a necessary element of the government's case. Since Reg. 1604.52(c) is a mandatory requirement, proof of the board's compliance with such regulation is necessary in order to convict the defendant. Consequently, Machado in his criminal defense must be allowed to show the failure of the draft board to comply with the residency regulation.

There are numerous cases which allow as part of the criminal defense, proof of the failure of the board's regulatory compliance. See Briggs v. United States, 397 F.2d 370 (9th Cir. 1968) (failure to give a pre-induction physical); United States v. Brooks, No. 22916 (E.D.Pa. Apr. 23, 1969), 2 S.S.L.R. 3056 (failure to be mailed an induction notice at least 10 days before date of induction); Petrie v. United States, 407 F.2d 267 (9th Cir. Feb. 12, 1969) (failure to reopen classification). The rule was aptly stated in United States v. Walsh, 279 F.Supp. 115, 121 (D.Conn.1968) in which the defendant's request for a reopening was denied without a formal board meeting. The court held that "[t]his failure to meet and act as a board violated the implicit requirements of 32 C.F.R. § 1604.-52a(d) and therefore of procedural due process. * * * Such disregard for the requirements of the regulation was arbitrary."

In all of these cases the defendants were raising the same type of claim as the defendant raises herein. For Machado argues a violation of due process in that the Selective Service arbitrarily refused to follow Reg. 1604.52(c) and that this failure invalidated the induction order; therefore the defendant cannot be found guilty of refusal to submit to the induction.

## V. ASSUMING QUO WARRANTO LIES, IT IS INADEQUATE.

 Even if it were assumed that quo warranto is a proper remedy it must be decided whether it is an adequate remedy. For if it is not adequate then it is not an exclusive remedy. See Lapides v. Doner, 248 F.Supp. 883 (E.D. Mich.1965). Rule 81(a) (2) of the Federal Rules of Civil Procedure does not provide for a federal substantive quo warranto proceeding; it only allows the federal courts to use the already existing common law quo warranto action. The common law action is encumbered by the requirement that the government bring such an action. An action in the nature of quo warranto cannot be maintained "except at the instance of the government." See Wallace v. Anderson, 5 Wheat. 291, 5 L.Ed. 91 (1890) (Marshall, J.). Quo warranto is a right of action "inherently in the Government * * *" Territory of Nebraska v. Lockwood, 3 Wall. 236, 18 L.Ed. 47 (1865). A private party does not have standing to bring such a proceeding. See

---

8. Haven v. United States, 403 F.2d 384 (9th Cir. 1968); DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968).

9. Jessen v. United States, 242 F.2d 213 (10th Cir. 1957); United States v. Richmond, 274 F.Supp. 43 (C.D.Cal.1967).

10. In *Stiles* the board had failed to classify registrant anew based on new information as required by Reg. 625.2(c). The court held that "the induction order was invalid and that Stiles * * * was entitled to set up its invalidity in his defense."

Johnson v. Manhattan RR., 289 U.S. 479, 502, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). In a recent federal case discussing quo warranto the court clearly stated that "a private individual has no standing to institute such a proceeding." Blackburn v. O'Brien, *supra* 289 F.Supp. at 292.

 It is also clear that the United States Attorney has discretion to decline to bring a quo warranto lawsuit. See cases cited above. Anno: Quo warranto, private person's right, 51 A.L.R.2d 1306, 1328. In the District of Columbia "interested persons" can bring a quo warranto action if the United States Attorney refuses. See United States ex rel. State of Wisconsin v. First Federal Savings and Loan Assoc., 284 F.2d 804 (7th Cir. 1957). But this Congressional grant was limited to the District of Columbia. In some state jurisdictions a private party can proceed alone if the public attorney refuses. However, there is no suggestion that the individual could compel the public attorney to bring the suit. Consequently, absent a specific statute, the individual cannot bring a quo warranto proceeding nor compel the public attorney to bring such a suit. Putting this doctrine together with the result in *Nussbaum*, the registrant is left without a federal forum in which to raise his claim. The denial of all judicial forums in which a criminal defendant can raise a defense may be a denial of due process. See Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

 The denial of a federal forum is more than a theoretical possibility. The court takes judicial notice of the fact that in the case of United States v. Johnson, No. 42910 (N.D.Cal. Nov. 18, 1969), defendant's attorney demanded that the United States Attorney bring a quo warranto proceeding against Local Board No. 53, but no proceeding was instituted. It is also a fact that the United States Attorney's office has been on no-

tice since the decision in *Beltran* over four months ago that Local Board No. 65 was improperly constituted and has instituted no quo warranto proceedings.

The conclusion that a quo warranto action is not adequate and therefore not exclusive is buttressed by two further arguments. First, it is doubtful that in the face of 50 U.S.C. App. § 460(b) (3) a pre-induction attack would lie. This section is an emphatic Congressional statement that no one can bring a judicial review of classification and processing prior to induction. A general attack of the kind suggested in *Nussbaum* would disrupt the selective service system. For example, not one draft board in San Francisco is properly constituted.[11] A quo warranto proceeding would bring all classification to a standstill until such time as the boards were properly constituted. Although the courts have not decided this particular issue, there are suggestions that such an attack prior to induction would not be allowed. The court in Anderson v. Hershey, 410 F.2d 492, 496 n. 11 (6th Cir. 1969), stated that a challenge to the unrepresentative composition of the local board by preinduction review would be impermissible. And in Sellers v. McNamara, 398 F.2d 893 (5th Cir. 1968) cert. denied, 395 U.S. 950, 89 S.Ct. 2022, 23 L.Ed.2d 470 (1969), the court refused to allow a preinduction review of a registrant who claimed the board's racial composition was improper.

The other argument pointing out the inadequacy of the quo warranto action revolves around the registrant's lack of counsel. To initiate a quo warranto proceeding in a selective service case the registrant would have to be familiar with the myriad of complex regulations; capable of statutory and regulatory interpretation; aware of the possibility of quo warranto; and skilled in research and investigation. An average registrant has none of these skills, and the crucial factor is that the registrant usu-

11. See Draft Boards Here Ignore the Courts, San Francisco Examiner and Chronicle, at 1, 10/19/69.

ally comes into contact with an attorney only *after* his refusal to submit to induction.

In the typical quo warranto case either a person has title himself and is therefore aware someone else improperly has title, or he is part of a corporation or business adversely affected and thereby has an attorney easily available for consultation. In draft cases the regulations themselves forbid a registrant counsel in the proceedings prior to induction and thereby discourage any contact with attorneys prior to the criminal charge. 32 C.F.R. § 1624.1(b). The addressees of members of the board are by regulation confidential. 32 C.F.R. 1606.62(c). Furthermore, the courts have held that the dates of appointment of the members are confidential. See Tuchinsky v. Selective Service System, 294 F.Supp. 803 (N.D.Ill.1969). The addresses and dates of appointment which are necessary in order to show failure to comply with Reg. 1604.52(c) are usually obtained through discovery proceedings, unavailable to the non-lawyer, or by investigative work not familiar to the registrant.

The case of defendant Machado is especially instructive. Here is a young man, born in Portugal, with only nine years of schooling, who was completely unaware of Reg. 1604.52(c) and a legalistic proceeding called quo warranto. And he, like most registrants, came to an attorney only after he was criminally charged.

When viewing the difficulty in bringing a quo warranto action for the registrant, the policy and command of 50 U.S.C. App. § 460(b) (3), and the dependence of a quo warranto proceeding on the public attorney's discretion the court must conclude that such a proceeding is an inadequate remedy and therefore not exclusive.

In light of the court's determination that Reg. 1604.52(c) is mandatory and that the failure of the draft board to comply with such regulation can be raised as a defense in the registrant's criminal trial; and in light of the court's

conclusion that quo warranto does not lie, and even if it did lie it would not be an adequate remedy, it is hereby ordered that the motion for judgment of acquittal be granted.