**UNITED STATES, Plaintiff,**
v.
**Lawrence G. LEMKE, Defendant.**
**No. Crim. 42607.**

United States District Court,
N. D. California.
Dec. 23, 1969.

Garfield W. Steward, San Francisco, Cal., for defendant.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for plaintiff.

## OPINION AND ORDER GRANTING MOTION TO DISMISS INDICTMENT

PECKHAM, District Judge.

Defendant Lemke moves to dismiss the indictment charging him with refusal to submit to induction in the armed forces of the United States (50 U.S.C.App. § 462) on the ground that the local draft board which denied his request for conscientious objector status, classified him 1–A and issued his induction order, was not properly constituted in accordance with 32 C.F.R. § 1604.52(c). This motion to dismiss is made on the authority of this Court's holding in United States v. Beltran, 306 F.Supp. 385, dated July 11, 1969.

The Government opposes defendant's motion on three grounds: first, the Government argues that 32 C.F.R. § 1604.52 (c) is only directory, not mandatory; second, even if mandatory, the U. S. Attorney argues that non-compliance with the regulation can only be attacked directly, not collaterally; and third, it is urged that non-compliance with the section has been "cured" since the appeal board's consideration of his 1–A classification is *de novo* or that it cannot be raised here because not raised before the appeal board. The Government's first two arguments rest on the authority of United States v. Nussbaum, 306 F.Supp. 66 (N.D.Cal. October 22, 1969) and United States v. Kaul, 305 F.Supp. 829 (N.D.Cal. October 28, 1969). The last proposition is based on 32 C.F.R. § 1626.26(a).

In *Beltran*, this Court held that discretionary acts of local draft boards which were constituted in violation of 32 C.F.R. § 1604.52(c) were invalid; that registrants were entitled to decisions made by boards composed in accordance with the letter and spirit of the Act and regulations. See United States v. Dominguez, Cr.No. 42908 (N.D.Cal. Sept. 26, 1969), Section 1604.52(c) reads:

> The members of local boards shall be citizens of the United States who shall be residents of the county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.

This Court went on to note that a draft board must be truly "local" to carry out many of the underlying purposes of the local board concept. In the original hearing and debates on the Selective Service Act the fact that a registrant was being judged by his "friends and neighbors" was strongly urged as a justification for local board autonomy and the lack of traditional procedural safe-guards accompanying the classification process. Further, although there may be controversy over the extent to which the local board system functions as a group of "friends and neighbors", it is clear that to allow the Selective Service System to ignore § 1604.52(c) would frustrate purposes intended to be served by the local board system and remove yet another safeguard in an area of decision-making already substantially stripped of traditional procedural safeguards. In the

instant case, we reaffirm our position in *Beltran*.

The Government's first two arguments have recently been dealt with by Judge Zirpoli in United States v. Machado, 306 F.Supp. 995 (N.D.Cal., November 21, 1969).

### I. MANDATORY NATURE OF 32 C.F.R. Sec. 1604.52(c).

■ The Government's position that Section 1604.52(c) is merely directory rests on the observation that while the regulation imposes the more specific residency requirement, the statute only imposes a county-wide requirement, and compliance with the statute is sufficient. But as Judge Zirpoli pointed out, this argument "flies in the face of numerous selective service cases in which the courts held that a board's failure to comply with the *regulations* was a violation of due process." *Machado*, at 997, citing *inter alia* Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968) and Briggs v. United States, 397 F.2d 370 (9th Cir. 1968).

The Government tries to reinforce its interpretation by noting the regulation's phrase "if at all practicable" and arguing that it "suggest that * * * the additional requirement * * * (is) not mandatory, but directory only." *Nussbaum*, at 68. But as was explained in *Machado*, the phrase in question only modifies the statement "members * * * [who] shall also, * * * be residents of the area * * *." If in fact members of that area *are* available to serve, then the phrase sheds no light whatsoever on whether this requirement is mandatory or discretionary. Traditionally, the word "shall" has been interpreted to mean "must". And the *Machado* court notes that a mandatory interpretation would be the only one consistent with three basic assumptions underlying the local board system: i. e., that the local board members are to be "neighbors" of the registrant; that the members are to be responsive to and under the scrutiny of the immediate community; and that traditional due process guarantees are not necessary because

the registrant is to receive individualized and informal treatment by the board. *Machado*, at 997.

### II. NON-COMPLIANCE WITH THE REGULATION CAN BE ATTACKED AT TRIAL.

■ The Government here argues, and Nussbaum held, that an attack on the failure of the board to comply with the regulation can only be raised by a "direct" proceeding, in the nature of a quo warranto. Here again, we follow *Machado*, which held that quo warranto, if it lies at all, is an inadequate remedy. This argument is made in detail in *Machado*, at 998–999, 1000, and will only be briefly paraphrased here. Additionally, we feel that Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1889), the principal authority for disallowing attack at trial, is inapposite here.

*Quo Warranto is inadequate.*

■ An action in the nature of a quo warranto cannot be maintained "except at the instance of the government." See, e. g., Blackburn v. O'Brien, 289 F.Supp. 289 (W.D.Va.1968). The United States Attorney has discretion to decline to bring such a lawsuit. See Annot., Quo Warranto, Private Persons' Right, 51 A.L.R.2d 1306 (1957). For example, Judge Zirpoli has taken judicial notice that in another selective service case, defendant's attorney requested that the United States Attorney institute such an action against a draft board in the Northern District of California and the request was refused. *Machado*, at 1001. Judge Zirpoli went on to note that in the months since our decision in *Beltran* the United States Attorney has been on notice that many local boards in this district are improperly constituted, but yet has instituted no quo warranto proceedings. The conclusion is that quo warranto is not adequate, and therefore not an exclusive remedy. This conclusion is buttressed by two further arguments: First, the prohibition on pre-induction judicial attack on draft board

processing in 50 U.S.C.App. § 460(b)(3) casts doubt on the availability of such proceedings; and, second, registrants in fact rarely acquire counsel necessary to effectively pursue quo warranto until after they are indicted, at which point it is too late to bring the "direct" action.

*Ex Parte Ward is not apposite.*

The principal basis of the argument that a registrant cannot attack the composition of his draft board during the course of his .criminal trial is the old Supreme Court case of Ex Parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1889). In that case petitioner brought habeas corpus charging that the judge who convicted him was not properly in office at that time. The Supreme Court denied relief stating that such a question could not be raised in the habeas corpus [collateral] proceeding but had to be attacked directly. Nothing was stated about raising the issue at trial.

In applying the *Ward* holding to a selective service criminal prosecution, *Nussbaum* joins several other selective service cases. See, Sellers v. McNamara, 398 F.2d 893, 895 (5th Cir. 1968) (separate opinion); Clay v. United States, 397 F.2d 901, 909–912 (5th Cir. 1968); DuVernay v. United States, 394 F.2d 979, 983 (5th Cir. 1968); Jessen v. United States, 242 F.2d 213, 215 (10th Cir. 1957); and United States v. Richmond, 274 F.Supp. 43, 61 (C.D.Cal.1967). After thorough consideration, we respectfully suggest that reliance in this context on the *Ward* doctrine is not well taken. Rather, we believe this to be an instance of a precedent being cited and recited over the years and finally being applied in a wholly different and improper context. We feel compelled to conclude that importation of *Ward* into the selective service area is both unwarranted and unwise.

Over the years, twenty-three federal cases have specifically relied upon Ex parte Ward, *supra*. Only two of these are non-selective service criminal cases, the others being civil matters involving private disputes, or petitions for habeas corpus (including § 2255 proceedings). The important statistic is not that the civil and habeas cases have followed *Ward,* but rather that the two criminal cases did *not.* Properly viewed it is understandable why, prior to its use in selective · service cases, *Ward* has not been applied in criminal cases. *Ward* itself was an habeas corpus case. Habeas corpus, although not a purely "civil" proceeding [see, Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)], is distinct and separate from the regular criminal trial. It is truly "collateral" in nature. Even in its current expanded state (unrecognizable by *Ward's* 1889 standards), many matters which could be raised at trial are still not cognizable in federal habeas corpus. Thus, the holding of *Ward* that a defect in a judge's appointment is not recognizable in such a "collateral" proceeding is not persuasive authority for not allowing an attack upon the appointment of a draft board member at the registrant's criminal trial. Similarly, the policies relevant and persuasive in the area of private civil litigation should hardly control in a criminal trial where an individual's liberty is at stake.

Both federal criminal (non-selective service) cases that cite *Ward* employ it in a very insignificant way. The first, Jordan v. United States, 60 F.2d 4 (4th Cir. 1932), was a perjury case that did not involve a question of collateral attack; *Ward* was simply included as the eleventh case in a long "string" citation offered to support the proposition that perjury may be predicated upon false statements made under an oath administrated by a de facto officer.

In the second, Leary v. United States, 268 F.2d 623 (9th Cir. 1959) (in bank) the court allowed without serious question an attack *on appeal* on the credentials of a judge (although on the merits the matter was decided adversely to the appellant). Here *Ward* was cited only in a footnote to the dissenting opinion, and then only to note that it was not apposite, as the *Leary* dispute was over

the assignment of a federal judge, not his initial appointment (the *Ward* factual setting).

The frequently cited case of Johnson v. Manhattan RR., 61 F.2d 934 (2d Cir. 1932) (Hand, J.) does not compel a different result. This was a civil suit in which the discussion of *Ward* was admittedly only dictum; an attack upon the trial judge's apparent disregard of local rules of court was not allowed collaterally as such conduct "[did] not go to the essence of the judge's power." 61 F.2d at 938. Thus, Judge Hand did not feel that such a minor infraction could be collaterally attacked. Certainly this narrow statement should not be persuasive in a criminal trial.

The last case deserving mention is Glidden v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). In what must be considered to be a fairly thorough emasculation, if not a sub silentio reversal, of *Ward*, the Court held that a judge's qualifications could be attacked for the first time on appeal before the Supreme Court. It is true that *Glidden* was concerned with the distinctions between an Article I and an Article III court, but its holding, without even mentioning *Ward* by name, leaves the latter's validity in serious doubt, and its assertion as unquestionable authority in selective service cases, unpersuaal setting).

A reconsideration of the six selective service cases citing *Ward, supra,* does not reveal the articulation of any reasons why registrants should not be allowed to attack the composition of their draft boards as a defense in their criminal trials. These selective service cases simply cite *Ward,* and its progeny of non-criminal cases, as authority that this point has been settled law since 1889. But our examination of these civil cases, and of *Ward,* itself, leads us to conclude that this reliance is misplaced in criminal cases.

Of course, the general principle that certain matters are not to be raised "collaterally" exists independently of the *Ward* case. However, we do not feel that its policies, such as economy of judicial time and remittance of certain matters to more appropriate tribunals, apply here. Proof of board members' residence is easily made; it requires no expertise. There is no other forum. The President, through the Selective Service System, may presumably act to place board members so that 32 C.F.R. § 1604.52(c) is complied with; however, there are no provisions for registrants or members of the public to appear before tribunals of the agency to seek compliance with that section. Trial is defendant's first realistic opportunity to raise this issue.

III. THE APPEAL BOARD'S DE NOVO REVIEW OF LEMKE'S FILE CANNOT CURE THE LOCAL BOARD'S NON-COMPLIANCE WITH SECTION 1604.52 (c).

The Government's last argument is dual in nature. The United States Attorney urges that defendant is precluded from raising the defense here because it was not presented to the appeal board. Alternatively, he argues that non-compliance was "cured" because the appeal board's review of defendant's file was *de novo.* 32 C.F.R. § 1626.26(a).

■ The first argument is that as Lemke did not attack the local board's non-compliance with 32 C.F.R. § 1604.52 (c) before the appeal board, he cannot do so at his criminal trial on an exhaustion-of-administrative-remedies theory. In effect, the Government argues that Lemke cannot seek judicial review in the federal courts, because of his failure to appeal this point within the administrative agency. But the Government's argument in this context has recently been rejected in the selective service area by the Supreme Court in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Judge Weinfeld recently dealt with this issue in his usual scholarly manner in United States v. Branigan, 299 F.Supp. 225, 233–236 (S.D.N.Y.

1969). Although in that case the challenge was to the delinquency regulations, the holding that failure to raise the issue before the appeal board did not prevent judicial consideration is applicable here. As in *Branigan*, the challenge is not aimed at the board's determination so much as the propriety of its making a determination at all. As in *Branigan* there is serious doubt whether the appeal board would have the authority to remedy improper local board composition. It cannot transfer local board members and no other remedy would be adequate. The appeal board's own reclassification, although *de novo*, is without the registrant's personal appearance and thus is not an adequate substitute. (See discussion, *infra*.)

United States v. Milliken, 416 F.2d 676, 679–680 (9th Cir. 1969) and cases cited therein are clearly distinguishable. *Milliken, et al.*, involved challenges to the propriety of particular classification decisions, a matter entirely separate from the question of the propriety of the local boards making discretionary decisions *vel non*. See Branigan, *supra*, 299 F.Supp. at 233–234 and nn. 49, 50.

▇ The second argument is that even if Lemke's classification by the local board was improper because of the board's non-compliance with the regulations, this defect is "cured" because the appeal board, which considered his file *de novo*, affirmed the 1–A classification. The argument is that an appeal board may cure deficiencies in a local board's classification by making its separate investigation of the registrant's file and an independent classification decision. However, this theory necessarily rests upon a given irregularity being "curable," e. g., that the appeal board will be able to make an independent classification unaffected by the local board's improper interpretation of the statute. See United States v. Atherton, Cr. No. 23,406 (9th Cir. Oct. 9, 1969), at 4, and cases cited therein.

▇ Such is not the case here; the non-compliance by the local board with the regulations, because of its improper composition, cannot be cured by the appeal board's *de novo* review of the record. Registrant Lemke had a right to a personal appearance before his local, but not the appeal, board. 32 C.F.R. § 1624(1) (a). This personal appearance was his chance to persuade the Selective Service System that he was a sincere conscientious objector and deserved a 1–0 classification. The Government does not, and cannot, demonstrate that the appeal board's *de novo* consideration of his *file* without affording him a personal appearance can cure the prejudice suffered by Lemke because of the denial in the first instance of a personal appearance before a properly-constituted local board.

This position finds support in several Court of Appeals decisions. See, e. g., Mintz v. Howlett, 207 F.2d 758, 762 (2nd Cir. 1953); Knox v. United States, 200 F.2d 398, 401–402 (9th Cir. 1952). As the Court in *Howlett* stated, 207 F.2d at 762:

> * * * [T]he action of the Appeal Board * * * in affirming the reclassification * * * does not improve the case. We have ruled in common with other courts that a registrant is entitled to a full and fair disposition of his contentions at every level of operation of the Selective Service System and that *a review by an appeal board may not serve to supply a deficiency in a fair hearing by the local board.* [Citations omitted.]

Additionally, this view "finds an echo" in the recent Supreme Court decision of In re Gault, 387 U.S. 1, 32–33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In that case, the Court held that failure of the authorities to provide notice prior to the first judicial hearing was not cured by provision of notice and the opportunity at a subsequent hearing to rebut charges and present evidence.

This analogy is particularly compelling in the selective service area since as noted above only at the local board level is the registrant entitled to a personal appearance.

This district has held that a local board's failure to grant a personal appearance cannot be cured by the appeal board's *de novo* consideration of the file. United States v. Laier, 52 F.Supp. 392 (N.D.Cal.1943). Likewise, we today hold that denying registrant Lemke a meaningful appearance (i. e., before a properly-constituted board) cannot be cured by the appeal board's *de novo* review of his file.

It would be denial of due process of law to hold that an appeal, *ipse dixit*, cures any and all defects committed by the local board, and can deny a registrant a meaningful personal appearance, one of the few procedural safeguards given him as a matter of right. 32 C.F.R. § 1624(1) (a).

In conclusion, this Court remains persuaded that the defense that this local board was not properly constituted is valid, and accordingly the Motion to Dismiss the indictment is granted.

It is so ordered.