**UNITED STATES of America,
Plaintiff,**

v.

**Raul Retamoza BELTRAN, Defendant.**

**Crim. No. 42330.**

United States District Court
N. D. California.

July 11, 1969.

U. S. Atty. Cecil F. Poole and Asst. U. S. Atty. John G. Milano, San Francisco, Cal., for plaintiff.

Philips B. Patton, Santa Cruz, Cal., for defendant.

## OPINION

PECKHAM, District Judge.

█ This matter was before the Court on Defendant's motion to acquit after the close of the government's case. The Defendant's Selective Service file reflects that on March 6, 1967, he was classified I–A. On December 27, 1967, he was ordered to report for induction on January 18, 1968. Defendant did not report and was processed as a delinquent on February 5, 1968; his delinquency was reported to the United States Attorney on April 29, 1968. On January 21, 1969, the Defendant requested that he be reclassified I–O. The Board considered this tardy request and refused to re-open his file. That the board need not re-open in such circumstances is clear. Palmer v. United States, 401 F. 2d 226 (9th Cir. 1968). That the board *may* re-open is also clear. 32 C.F.R. § 1625.14. Any re-classification by the board must be reported to the United States Attorney, obviously because such board action may have a bearing on the United States Attorney's decision to proceed with or decline prosecution. 32 C. F.R. § 1642.42.

█ The Defendant contends that this motion to acquit should be granted because his local board was not properly

constituted at the times his classification was considered. Selective Service Regulation 1604.52(c) states in pertinent part:

> The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.

Jurisdiction in Monterey County is divided between Local Boards 65 and 66. Local Board 66 encompasses substantially the City of Salinas and environs, and Local Board 65 encompasses the area in which the Defendant resides, including Carmel, Pacific Grove, Monterey, Seaside, and King City. At the times Defendant's classification was considered Local Board 65 included four members who resided in the area served by Local Board 66, and one member who resided in the area served by Local Board 65. Local Board 66 also included at least one member who was a resident of the area served by Local Board 65.

Under the regulation if it were practicable to compose Local Board 65 of residents of the area served by that board, then the above composition of the board would be improper. Assuming that there is a presumption of administrative regularity in favor of the government (*contra*, United States v. Hinch, 292 F Supp. 696 (W.D.Mo.1968), any such presumption is overcome by the evidence in this case, because the most reasonable inference to be drawn from the evidence is that it was practicable to compose the board of local residents. The Court can take judicial notice that the area encompassed by Local Board 65 is inhabited by a substantial number of qualified citizens. Reference can be made to the population data of the State Department of Finance and the United States Bureau of Census to substantiate this. This area, no doubt, contains many citizens eligible and willing to serve. It also appears that one member of Local Board 66 is a resident of the area encompassed by Local Board 65. There

does not appear to be any reason why this member, who is apparently qualified and willing to serve, should not be serving on Local Board 65. This Court, therefore, finds that Local Board 65 is improperly constituted.

■ That a local board be truly "local" is necessary in order to carry out some of the underlying purposes of the local board concept. In the original hearings and debates on the Selective Service Act the fact that a registrant was being judged by his friends and neighbors was strongly urged as an excuse for local board autonomy and the simplicity and lack of procedural formality which accompanies the selection process. In 1940 General Hershey said

> [T]he choice [of who is to serve] is being made by the neighbors of the man, and we think that the thing must be kept simple enough so that the average citizen can see how it works * * *" Hearings Before the Senate Military Affairs Committee on S. 4164, 76th Cong., 3d Sess. 384 (1940).

In support of the local board system Representative Mott also said

> The members of the local boards thus assume a great and important responsibility which they carry out under the continuous observation of all other members of the local community. This in itself is the best assurance both of efficiency and impartiality and justice. It is about as far removed from bureaucracy and dictatorship as anything that can be imagined. 86 Cong.Rec. 11678 (1940).

Although the assumption that the local board system operates in such a fair, efficient, and unbiased way in light of the tremendous number of registrants which a board may have to process has been drawn into doubt (see National Advisory Commission on Selective Service, pp. 20, 131–32), Congress retained the local board system in 1967. In fact, in answer to the National Advisory Commission's criticisms the Task Force on

the Structure of the Selective Service System said in October 16, 1967

> The structure providing for Local Boards rather than Area Offices with civil service staffs is of greatest importance in the "Judgment" type cases. * * *
>
> Still more important is the fact that local citizens possess greater in-depth knowledge of social and economic conditions in their respective communities than employees of Area Offices could be expected to have. Also, being more accessible than Area Offices, Local Boards are more likely, in controversial cases, to have direct contact with the registrant, who has the right of a personal appearance before his Board, as well as with the registrant's family and employer. Local Boards with this better local knowledge and closer contacts are far better able to render reasonable decisions than Area Offices. Task Force on the Structure of the Selective Service System, X–2 (1967).

Although there may be controversy over the extent the local board system does function as a group of "friends and neighbors", it is abundantly clear that to allow the Selective Service to ignore 32 C.F.R. § 1604.51(c) would frustrate purposes intended to be served by the local board system and remove yet another procedural safeguard in an area of decision making already substantially stripped of traditional procedural safeguards. See, e. g., 32 C.F.R. § 1624.-1(b) ("[N]o registrant may be represented before the local board by anyone acting as attorney or legal counsel"). Since the consequences of classification decisions are severe and judicial review of their accuracy is very limited (See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Wills v. United States, 384 F.2d 943 (9th Cir. 1967)) a violation of a regulation whose purpose is germane to insuring the accuracy of the decisional process should be considered prejudicial. While it is true that one cannot know whether a registrant's classification would have been

different had the board been properly constituted, it is also true that the registrant's classification might have been different. In Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968), the defendant was not tendered a loyalty questionnaire. Without inquiring into what the defendant would have said had he completed a questionnaire, and regardless of the fact that the regulation was designed primarily for the benefit of the armed services, the court said

> In this case Oshatz might not stand convicted of a felony had he been given the opportunity to execute the loyalty questionnaire. * * * [T]hat is sufficient prejudice to require reversal.

See also Brede v. United States, 396 F.2d 155, modified on rehearing 400 F.2d 599 (9th Cir. 1968). This court considers the violation of 32 C.F.R. § 1604.-51(c) to be a more fundamental violation of the registrant's rights than those which called for reversal in *Oshatz* and *Brede*.

■ There is a doctrine in administrative law which at first glance would cast doubt on the propriety of attacking the constitution of a local board through the device of raising the question as a defense to a criminal prosecution. In Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899), a prisoner attempted through habeas corpus to have his conviction set aside on the grounds that the commission of the judge who presided at the trial was defective. In the *Ward* case, and in several similar cases cited therein, the court held that "the title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be *collaterally* attacked * * *." [Emphasis added]. The progeny spawned by the *Ward* case have included several Selective Service cases in which alleged unlawful constitution of a local board has been raised as a defense. In Jessen v. United States, 242 F.2d 213 (10th Cir. 1957) it was held that the fact that the Board chairman had moved out of the

county prior to the issuance of an order to report for civilian work could not be raised as a defense in a prosecution for failure to report. In Du Vernay v. United States, 394 F.2d 979 (5th Cir. 1968) the court made a similar assertion by way of dictum. *Id.* at 983, n. 6; See Sellers v. McNamara, 398 F.2d 893 (5th Cir. 1968) (Separate opinion of Tuttle, J.). In United States v. Richmond, 274 F.Supp. 43 (C.D.Cal.1967) the court, after first holding that there is no requirement that board membership be distributed along racial lines and finding that there was no evidence that any other constitution of the board was "practicable", went on to note the *Ward* and *Jessen* cases and to recite the proposition that the constitution of the board could not be challenged in the criminal proceeding. *Id.* at 60–61.

A case apparently taking a less rigid approach is Haven v. United States, 403 F.2d 384 (9th Cir. 1968). After upholding the trial court's finding that Jehovah's Witnesses were not systematically excluded from board membership, the court added the following dictum:

> While this may dispose of the appeal, we prefer to rest our decision on a broader ground. We find no support in administrative law or in constitutional law for a contention that the composition of the membership of an administrative board \* \* \* may be attacked by showing that certain groups or classes of persons, racial, religious or otherwise, have never been privileged to serve on such board.
>
> \*   \*   \*   \*   \*   \*
>
> [I]f the local board members have been appointed by the President upon the recommendation of the Governor, and each member meets the requirements of the law and *regulations,* no *further attack* upon the composition of the board may be entertained. [Emphasis added].

It would appear that such an attack to be successful must, as in the present case, be geared to a violation of a specific regulation. The court recognizes that a violation of 32 C.F.R. § 1604.55 (disqualification because of kinship or employment relationships) could result in such an attack. The court also cites as another example United States v. Fielder, 136 F.Supp. 745 (E.D.Mich.1954) where a defendant was acquitted because a board member was biased. Finally, there is no evidence in the present case that the contention was "wilfully withheld for assertion for the first time as a defense to a criminal prosecution" because there is no evidence that the defendant knew of the improper membership of the board prior to this criminal prosecution. It would clearly be unreasonable to impute to a registrant knowledge of information which is clearly within the knowledge of the board members and access to which is severely restricted by regulation. 32 C.F.R. § 1606.62(c).

In another case where an alleged violation of 32 C.F.R. § 1604.52(c) was urged as a defense to a criminal prosecution it was held that not only could the challenge be made in this manner, but that the burden of proof was on the government to show compliance. United States v. Hinch, *supra.* Because in the *Hinch* case the prosecution was invalid for other reasons, unlike the present case it was not necessary to decide the question of whether a violation of the regulation, if shown, would constitute a defense.

While in the normal case disqualification of members of an administrative tribunal should be challenged by direct attack, there is good reason for making an exception in the Selective Service area. 50 U.S.C. App. § 460(b) (3) provides:

> No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution \* \* \* after the registrant has responded either affirmatively or negatively to an order to report for induction \* \* \*.

**390**

This statute evidences a strong policy of the Congress discouraging direct attacks on the processing of registrants. Indeed, one of the more difficult problems presented by the Selective Service Act is the question when, if ever, a direct attack will be permitted. See Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L. Ed.2d 402 (1968). Even where direct attack has been permitted, it has not been suggested that the same defense could not have been made to a criminal prosecution. In light of the strong policy discouraging pre-induction judicial review, it would be anomalous to suggest that the present challenge could be made *only* by direct, pre-induction review.

Order entered accordingly.