UNITED STATES of America
v.
Dennis Jerome WILLIAMS.
Crim. No. 23579.

United States District Court,
E. D. Pennsylvania.
Oct. 2, 1970.

**1364**

Louis C. Bechtle, U. S. Atty., Carl Melone, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Richard S. Bank, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

The defendant in this criminal prosecution has been indicted for failure to perform a duty imposed by the Selective Service Act, to wit, failure to report for and submit to induction into the Armed Forces in violation of 50 U.S.C. App. §§ 454, 462. Defendant waived a jury trial and moved for a judgment of acquittal at the close of all the evidence pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure. After reviewing the whole record, we have decided to grant the motion for judgment of acquittal and make the following

### I. FINDINGS OF FACT

(1) The defendant, Dennis Jerome Williams, was born on July 21, 1949, in Philadelphia, Pennsylvania, in which city he resided at all times material to this action.

(2) On June 8, 1967, the defendant registered with Local Board No. 133 (hereinafter "Local Board" or "Board") in Philadelphia, Pennsylvania, in accordance with the Selective Service Act of 1948, as amended.

(3) On June 30, 1967, the Local Board mailed to the defendant Selective Service System (hereinafter "SSS") Form 100, "Classification Questionnaire".

(4) On July 24, 1967, the defendant returned said "Classification Questionnaire" to the Local Board. In executing this Form, the defendant claimed to be a Conscientious Objector by reason of religious training and belief and requested the Local Board to furnish him with a special form for Conscientious Objectors (SSS Form 150). The SSS Form 150 is designed to furnish the Local Board with information necessary to evaluate a conscientious objector claim.

(5) On July 24, 1967, Miss Marlyn Woods, Executive Secretary of the Local Board, mailed by regular post an SSS Form 150 to the defendant at his existing mailing address, 3323 West Cumberland Street, Philadelphia, Pennsylvania.

This Form bore the date of mailing (July 24, 1967) in its legend and was to be returnable by August 4, 1967.

(6) The SSS Form 150, sent by the Local Board, was never received by the defendant. An entry in the Local Board minutes, dated August 4, 1967, noted: "SSS Form 150 not returned by the registrant." However, the Local Board never made inquiry as to why the Form had not been returned or as to whether the defendant desired to pursue his claim.

(7) On October 12, 1967, the defendant was classified I–A by a 4–0 vote of the Local Board. The Local Board did not consider the conscientious objector claim since a Form 150 had not been submitted. As of the date of this classification and at all times material to this action, all five members of Local Board No. 133 were citizens of the United States and residents of Philadelphia County but none of the five members resided within the geographical boundaries of Local Board No. 133.

(8) On October 12, 1967, the Executive Secretary of the Local Board mailed SSS Form 110, "Notice of Classification", to the defendant, together with SSS Form 217, "Notice of Right to Personal Appearance and Appeal." The SSS Form 217 had the following language crossed out:

"The Government Appeal Agent for this local board is:
Name ＿＿＿＿＿＿＿＿."

(Plaintiff's Exhibit G–1).

(9) The defendant, who received his Notice of Classification, did not request a personal appearance or file an appeal within the proscribed thirty (30) day period. (Notes of Testimony, hereinafter designated as "N.T.", p. 68).

(10) On April 26, 1968, the Local Board mailed to the defendant an "Order to Report for Armed Forces Physical Examination" (SSS Form 223). This examination was held on May 15, 1968, and the defendant was found acceptable for induction.

(11) On May 27, 1968, the defendant received an "Order to Report for Induction" (SSS Form 252) on June 18, 1968 at 7:30 A.M.

(12) On June 13, 1968, the defendant submitted to the Local Board a properly executed "Special Form for Conscientious Objector" (SSS Form 150), which furnished the information necessary for the Local Board to evaluate his claim. The submitted Form 150 was obtained by the defendant from a draft counseling service and bore no date in the legend. The defendant also requested, in writing, a personal appearance with respect thereto and a postponement of induction.

(13) On June 13, 1968, the Local Board requested State Headquarters of the Selective Service System for permission to postpone the induction until the July call in order to give the Local Board an opportunity to review the SSS Form 150.

(14) On June 17, 1968, State Headquarters gave the following instructions to the Local Board:

"If the Board first determines according to section 1625.2 of the regulations that there has been a change in the registrant's status resulting from circumstances over which he had no control then it may reopen and consider anew the classification of the registrant. However, if the board finds there has been no change in the registrant's status resulting from circumstances over which he had no control but believes that the registrant's claim of conscientious objection has merit, the board may request the State Director to request the local board to reopen and consider anew according to section 1625.3."

(15) On June 25, 1968, the Executive Secretary of the Local Board advised the defendant by letter that he was under an order to report for induction on July 15, 1968 at 7:30 A.M.

(16) On July 11, 1968, the Local Board met and without granting the defendant a personal appearance decided not to reopen the classification.

(17) At this July 11, 1968 meeting, the members of the Local Board reviewed

the complete file and read the directive from State Headquarters. "It was their decision that there was no change in (defendant's) status. It was also their decision his claim did not have merit. So they felt that it was not necessary for him to come in for a personal appearance." (N.T. p. 53).

(18) On July 11, 1968, the defendant was notified by letter of the Board's action and was directed to report for induction on July 15, 1968 at 7:30 A.M.

(19) On July 15, 1968, the defendant reported for induction as directed but refused to submit to induction. Thereafter, he was reported to the United States Attorney for the Eastern District of Pennsylvania as a delinquent registrant and the instant prosecution ensued.

## II. OPINION

The issues in this case are: (1) whether, at all times material to this action, Local Board No. 133 was illegally constituted since the members thereof were not residents of the area in which their Local Board had jurisdiction; and (2) assuming that the Board was properly constituted, whether the Local Board's treatment of the defendant's conscientious objector claim violated due process and, as such, the order to report for induction was invalid.

## COMPOSITION OF LOCAL BOARD NO. 133

Defendant grounds his attack on the composition of his Local Board on the fact that, at all times material to this action, Local Board No. 133 was composed of five members all of whom were residents of the *county* in which the Board had jurisdiction but none of whom were residents of the *area* served by Local Board No. 133. (Finding of Fact No. 7).

The applicable statute is 50 U.S.C. App. § 460(b) (3) which states in pertinent part that

"* * * each member of any local board shall be a civilian who is * * residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction * * * "

The regulation promulgated under the statute (32 C.F.R. § 1604.52(c)), which was in effect at all times material to this action, provides:

"The members of local boards shall be citizens of the United States who shall be residents *of a county* in which their local board has jurisdiction *and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction."* (Emphasis supplied).

It is the defendant's contention that since the Government presented no evidence as to why it was not practicable to compose Local Board No. 133 of residents of the area served by that Board, then the above composition of the Board would be improper, thus invalidating his order to report for induction.

## (1) EXHAUSTION OF ADMINIS-TRATIVE REMEDIES

The Government initially argues that since the defendant did not appeal his I–A classification on the ground that his Board was improperly constituted he is now precluded from raising this defense for failure to exhaust his administrative remedies. See United States v. Brooks, 415 F.2d 502, 505 (6th Cir. 1969); DuVernay v. United States, 394 F.2d 979, 981 (5th Cir. 1968), aff'd 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969). We cannot agree that application of the exhaustion doctrine would be appropriate in the present case because of the following reasons:

(1) The applicable statute, 50 U.S.C. App. § 460(b) (3), makes no reference to exhaustion of administrative remedies as a prerequisite to challenging the validity of a classification as a defense to a criminal prosecution for refusal to submit to induction;

(2) The Notice of Classification Form, SSS Form 110, which was sent to the defendant, informs the registrant of his right to appeal his classification, but

does not inform him that failure to appeal may bar a subsequent challenge to the validity of his classification;

(3) The record is barren of any inference or facts that the defendant consciously and deliberately chose to reject any recourse to the administrative review available within the Selective Service System (See United States v. Zmuda, 423 F.2d 757 (3rd Cir. 1970));

(4) All administrative remedies are now closed to the defendant and it would be an exceedingly harsh measure to deprive him of a defense to a criminal prosecution;

(5) This issue, unlike many Selective Service classification questions, does not involve the application of expertise or the exercise of discretion of either the local boards or the appeal boards.

Although we have found no interest underlying the exhaustion rule which would compel the rule's application in this case, "we must also ask whether allowing all similarly situated registrants to bypass administrative appeal procedures would seriously impair the Selective Service System's ability to perform its functions." McKart v. United States, 395 U.S. 185, 197, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969).

The obvious fear of the Government is that if the defendant is allowed this defense, and if he prevails, the primary function of the Selective Service System —the rapid mobilization of manpower— may be thwarted so far as Local Board No. 133 is concerned. Whether or not this fear may be justified, we do not think that the exhaustion doctrine can be employed to strike this otherwise valid defense since the exhaustion doctrine is assertedly necessary to compel resort to the Selective Service System's processes of review *only* where those processes can correct errors. But see Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968). However, the alleged error here—the composition of Local Board No. 133—is one which neither the local board nor the appeal board can correct, rather it is an "error" which can be corrected only by the President, whose authority it is to appoint such board members. 50 U.S.C. App. § 460(b) (3). Accordingly, in this case, where there appears no significant interest to be served in having the Selective Service System decide this issue before it reaches the courts, we do not believe that defendant's failure to appeal his classification should foreclose judicial review.

### (2) COLLATERAL ATTACK ON A DE FACTO BOARD

Assuming that the exhaustion doctrine does not bar the defense of improper composition of the Board, the Government nonetheless contends that since all members of Local Board No. 133 were residents of Philadelphia *county* it was in all events a *de facto* board and the residential qualifications of its members are not subject to collateral attack. United States v. Chaudron, 425 F.2d 605, 611 (8th Cir. 1970); Czepil v. Hershey, 425 F.2d 251, 252 (7th Cir. 1970); United States v. Brooks, 415 F.2d 502, 505 (6th Cir. 1969); United States v. Nussbaum, 306 F.Supp. 66 (N.D.Cal. 1969); see also Ex Parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899), and its progeny. We view this argument as raising two primary issues, to wit, (1) assuming compliance with the *statutory* residency requirements for Local Board members, what is the legal effect of failure to comply with the residency qualifications of the *regulation;* and (2) assuming adverse legal effect from failure to comply with the regulation, can the composition of the Local Board be subject to collateral attack in a defense to a criminal prosecution for failure to report for and submit to induction.

Regarding the legal effect of the regulation, the Government argues that the "practicability" clause of the regulation is discretionary and not mandatory since the Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3), *supra,* only requires that board members reside in the *county* in which the board has jurisdiction, a condition which all the board members here have satisfied. See

Czepil v. Hershey, *supra;* United States v. Nussbaum, *supra.* We disagree.

■ Initially, we note that the Selective Service Act of 1948 authorized the President to create and establish civilian local boards and to prescribe the necessary rules and regulations regarding their creation. Act of June 24, 1948, ch. 625, Title I, § 10(b) (1) and (3), 62 Stat. 618. Former President Harry S. Truman, in Executive Order No. 9979 (3 C.F.R. 713, 717 [1944–1948 Comp.], effective July 20, 1948) saw fit to exercise this authority and promulgated 32 C.F.R. § 1604.52(c).[1] In so doing, President Truman was merely making regulatory what has been the stated policy assumptions behind the creation and existence of the local board system—that "little groups of neighbors", possessing greater in-depth knowledge of social and economic conditions in their respective communities and having closer contacts with the registrant, create a forum in which board members are far better able to render reasonable and informed decisions without the need for traditional procedural safeguards.[2] Indeed, the regulation, in seeking to make policy justifications a reality, states in no uncertain terms that "if *at all* practicable" (not "if practicable") local boards "*shall*" (not "may") be composed of local residents. The language is unequivocal, and considered in light of the policy background, inexorably leads one to the conclusion that its effect is mandatory and deviation is allowed only where it is shown to be "impracticable" to compose the board of local residents. United States v. Cabbage, 430 F.2d 1037 (6th Cir. July 31, 1970); United States v. Lemke, 310 F.Supp. 1298 (N.D.Cal. 1969); United States v. Machado, 306 F. Supp. 995 (N.D.Cal.1969); United States v. Beltran, 306 F.Supp. 385 (N.D. Cal.1969).

■■ Thus confronted with an authorized regulation, promulgated by the President,[3] mandatory in its terms to effectuate established policy, and presented with no facts to suggest that it would have been impracticable to abide by the regulation,[4] we must find that the Board is not lawfully constituted. Deprivation of liberty by means of an order issuing from an unlawfully constituted body is a denial of due process, and in this case results in invalidating the induction order. United States v. Machado, 306 F. Supp. 995 (N.D.Cal.1969). We recognize that "[S]ome courts have required in certain situations a showing of actual prejudice before holding that a regulation violates due process. In the present context such a doctrine would work a fundamental unfairness to the defendant, for it is virtually impossible to show that a different result would have followed if the board had been properly

1. This regulation was amended by President Lyndon B. Johnson, in Executive Order No. 11360, to strike out the requirement that only male citizens could be board members. See 3 C.F.R. 295, 297 (1967 Comp.), effective June 30, 1967. President Johnson acted pursuant to authority vested him in the Selective Service Act of 1967. See 50 U.S.C.App. § 460(b) (1) and (3). The authorization granted the President in the 1967 Act is the same as was embodied in the Selective Service Act of 1948, *supra.*

2. See authorities and official statements cited in United States v. Machado, 306 F.Supp. 995 (N.D.Cal.1969), and United States v. Beltran, 306 F.Supp. 385 (N.D. Cal.1969).

3. We should note that the court in United States v. Nussbaum, *supra,* was not made

aware of the fact that the residence requirement of 32 C.F.R. § 1604.52(c) was promulgated by the President and not by the Director of the Selective Service System. We can only speculate whether the finding of that court, and those which followed it (See Czepil v. Hershey, *supra;* United States v. Chaudron, *supra*), that the regulation should be interpreted as directory rather than mandatory, would have been different had the true source of the regulation been known. In our view, had the Director promulgated the regulation, it would have raised serious question as to whether he had exceeded the scope of his delegated authority. See 32 C.F.R. § 1604.1(a); Selective Service Law Reporter ¶ 32.

4. See our discussion of "Burden of Proof", *infra.*

constituted. And yet, given the broad powers of discretion" [5] and "since the consequences of classification decisions are severe and judicial review of their accuracy is very limited * * * a violation of a regulation whose purpose is germane to insuring the accuracy of the decisional process should be considered prejudicial." [6]

Even though we find that the regulation is mandatory, it is the Government's position that the composition of the board cannot be attacked in a collateral proceeding. The implication in this argument is that, although it is improper to collaterally attack the residential qualifications of members of a *de facto* board, they can be challenged by a direct attack. Indeed, some courts have noted that a *quo warranto* proceeding would provide an appropriate forum for such a direct attack. See Czepil v. Hershey, *supra;* United States v. Nussbaum, *supra.*

To answer this argument we need only cite Judge Zirpoli's scholarly analysis in *Machado, supra,* where he sets forth the following reasons why *quo warranto* would not be an adequate or appropriate remedy in this case:

(1) at no time has the doctrine of *quo warranto* been used to deny a person, in his criminal trial, the right to challenge an element of the prosecution's case; [7]

(2) the existing common law *quo warranto* action is encumbered by the requirement that the Government bring such an action and it is clear that the United States Attorney has discretion to decline to bring a *quo warranto* lawsuit;

(3) the language of 50 U.S.C. App. § 460(b)(3) [8] evidences a strong Congressional policy discouraging pre-induction attacks on the processing of registrants; [9]

(4) the information [10] and legal counsel [11] needed to bring such an action are not readily available to a registrant in the pre-induction stage.

[5] Nor do we believe that direct attacks, be they *quo warranto* proceedings or otherwise, should be an exclusive avenue for attacking the residential qualifications of local board members. The reasons set forth at (3) and (4) above support this view as well as the fact that there is no evidence that the defendant here knew of the improper membership of the board prior to this criminal prosecution. It would clearly be unreasonable to impute to this defendant, a 21 year old high school graduate, who was completely unaware

5. United States v. Machado, *supra*, at 998.

6. United States v. Beltran, 306 F.Supp. 385, 388 (N.D.Cal.1969).

7. The defendant here cannot be judged guilty of a violation of 50 U.S.C.App. §§ 454, 462, unless there is a valid induction order. "A prerequisite to a proper induction order is procedural due process * * * Therefore, draft board compliance with the applicable selective service regulations is a necessary element of the government's case. Since Reg. 1604.52(c) is a mandatory requirement, proof of the board's compliance with such regulation is necessary in order to convict the defendant. Consequently [the defendant] in his criminal defense must be allowed to show the failure of the draft board to comply with the residence regulation." United States v. Machado, *supra*, 306 F.Supp. at 1000. See also Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

8. In pertinent part, this section reads as follows:

" * * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * * "

9. Insofar as Czepil v. Hershey, *supra*, concerned a pre-induction suit, it is distinguishable from the case at bar.

10. The addresses of members of the board are by regulation confidential (32 C.F.R § 1606.62(c)), and the courts have likewise held that the dates of appointment of members are confidential. See Tuchinsky v. Selective Service System, D.C., 294 F.Supp. 803, aff'd, 418 F.2d 155 (7th Cir. 1969).

11. The regulations forbid a registrant counsel in proceedings prior to induction and thereby discourage any contact with attorneys prior to the criminal charge. 32 C.F.R. § 1624.1(b).

of 32 C.F.R. § 1604.52(c) and a legal proceeding called *quo warranto*, knowledge of information which is within the province of the board members and access to which is severely restricted by regulation and court decisions. 32 C.F.R. § 1606.62(c); Tuchinsky v. Selective Service System, 418 F.2d 155 (7th Cir. 1969). Further, we have serious reservation in blindly applying a doctrine—that no collateral attack on the qualifications of a *de facto* board will be allowed—that would strip a defendant of a valid defense to a criminal prosecution for which he faces up to five years imprisonment. See Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed.2d 834 (1944). For the foregoing reasons, we find that the defense of an improperly constituted board can properly be invoked in this collateral proceeding.

### 3. BURDEN OF PROOF

Even were we to allow this defense, the Government urges that there is a presumption of regularity which attaches to official proceedings and the acts of government officials, and hence, that the burden of proof of "practicability" does not fall upon the Government, unless the defendant submits evidence to the contrary. The mere fact, the Government argues, that all five local board members reside outside the jurisdictional confines of the Board is not enough to find that the defendant has met his burden of proof. We disagree.

Initially, we do not think that the presumption of regularity which attaches to governmental *acts* and *proceedings* should necessarily apply in cases like the one at bar which questions the *jurisdictional* basis for governmental action. See Wells v. United States, 5 Cir., 158 F.2d 932, cert. den. 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1276 (1947). On the issue of "practicability", the defendant here does not complain of a particular action taken by the Local Board but rather questions their very basis for acting at all.

Even were we to assume that the presumption of governmental regularity applied to this case, we believe that after the defendant has shown that all the Board members reside outside of the jurisdictional area of the Local Board on which they sit, and since the Court takes judicial notice of the fact that the area encompassed by Local Board No. 133 is densely populated and inhabited by a substantial number of qualified citizens,[12] the presumption is overcome and the burden of proving that it was not practicable to appoint local residents then shifts to the Government. See United States v. Beltran, 306 F.Supp. 385, 387 (N.D.Cal.1969); United States v. Hinch, 292 F.Supp. 696, 698 (W.D.Mo. 1968) (dicta). Contra United States v. Johnson, 302 F.Supp. 584, 591–592 (M.D. Pa.1969). This result appears to be not only logical but fair, since the Government, as the appointing arm,[13] has with-

12. When we speak of "qualified" citizens we mean those who meet the threshold qualifications for appointment to serve on a Local Board. More specifically, these qualifications are enumerated in the following subsections of 32 C.F.R. § 1604.52:

"(c) The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction. No member of a local board shall be a member of the armed forces or any reserve component thereof. . Members of local boards shall be at least 30 years of age.
(d) No member shall serve on any local

board for more than twenty-five years, or after he has attained the age of seventy-five years."

To substantiate our finding that "qualified" citizens reside within the area encompassed by Local Board No. 133, reference can be made to the population data of the United States Bureau of the Census. See United States v. Beltran, *supra*.

13. The Selective Service Act of 1967, 50 U.S.C.App. § 460, provides in pertinent part that
"(b)  *  *  *
(3)  *  *  * Each local board shall consist of three or more members to be appointed by the President from recommendations made by the respective [state] governors or comparable executive officials  *  *  *"

in its province the data and reasons upon which they apparently relied when the members of Local Board No. 133 were selected. However, the Government has not here favored us with any substantiated reasons why it was not practicable to compose Local Board No. 133 of local residents and, as such, the Government has not met its burden of proof on this issue.

The defendant here cannot be found guilty of a violation of 50 U.S.C. App. §§ 454, 462, unless there was a valid induction order. A prerequisite to a proper induction order is procedural due process. Therefore, draft board compliance with the applicable Selective Service regulations is a necessary element of the Government's case and, consequently, the defendant, in his criminal defense, must be allowed to show the failure of the draft board to comply with such regulations. Since we have found 32 C.F.R. § 1604.52(c) to be a mandatory requirement and that the Government has failed to prove its compliance with such regulation, it necessarily follows that the induction order, being issued by an illegal board, was invalid. Accordingly, the defendant's motion for judgment of acquittal is hereby granted.

The practical effect of our decision would appear to place in jeopardy all proceedings of Local Board No. 133, as it was constituted in this case. However, in our view, this result is dictated by law and policy and serves notice on the appropriate authorities that they are obligated to either abide by their own regulations or to prove why compliance with such regulations was impracticable.

## DUE PROCESS

We further hold that, even if Local Board No. 133 were found to be properly constituted, the order to report for induction was nonetheless invalidated by reason of the Board's denial of due process to the defendant in its treatment of the defendant's conscientious objector claim. The crucial facts are these.

The Board was first put on notice of the defendant's desire to seek a conscientious objector deferment on July 24, 1967, when he returned to the Local Board his completed Classification Questionnaire (SSS Form 100) in which defendant claimed a conscientious objector status and requested that he be sent a special form for Conscientious Objectors (SSS Form 150). The SSS Form 150, which is designed to furnish the Local Board with information necessary to evaluate a conscientious objector claim, was sent to the defendant at his known address and bore the date of its mailing (July 24, 1970) in its legend. This SSS Form 150 was never received by the defendant. As a result, an entry appears in the minutes of the Local Board which notes that this Form was not timely returned by August 4, 1967. The Board never made further inquiry to determine why the SSS Form 150 was never returned and, although aware of the defendant's claim for conscientious objector status, never considered the merits of such claim when the defendant was classified I–A on October 12, 1967, because no Form 150 was included in the file to substantiate the claim. The defendant received notice of his I–A classification (SSS Form 110), together with a modified "Notice of Right to Personal Appearance and Appeal" (SSS Form 217). The defendant did not request a personal appearance or an appeal within the proscribed thirty (30) day period. Thereafter, on May 27, 1968, the defendant received an order to report for induction.

■■ It is our finding that the failure of the Local Board to consider the conscientious objector claim at its meeting of October 12, 1967, was due to no fault of the defendant but rather was occasioned by the Local Board's dereliction of its duties. It is clear from the regulations [14] that the supply to a regis-

14. 32 C.F.R. § 1621.11 provides: "A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on a Special Form for Conscientious Objector (SSS Form No. 150) which, when filed, shall become

trant of a requested Form 150 is a mandatory duty of the Board. Here, the Local Board's mailing of the requested Form 150 to the defendant's last reported address merely created a *rebuttable* presumption that the defendant actually received it. United States v. Bowen, 414 F.2d 1268 (3rd Cir. 1969). However, this presumption was overcome by our finding the defendant's statement that he never received such a Form from the Board to be credible.[15] Further, when the Form 150 was not timely returned, it was the duty of the Board, in light of their knowledge of the defendant's desire for a procedural right, to obtain clarification from the defendant as to why the Form had not been returned and as to whether he wished to pursue his claim. See United States v. Turner, 421 F.2d 1251 (3rd Cir. 1970); United States v. Derstine, 129 F.Supp. 117 (E.D.Pa.1954). Rather than seek such clarification, however, the Local Board treated the conscientious objector claim as having been effectively waived.

■ In these circumstances, we find that the defendant was denied due process of law by the Board's failure to afford him the means to present adequately his claim for classification as a conscientious objector, and that such treatment invalidated the I–A classification and the order to report for induction flowing therefrom.

There remains for our consideration the question whether the deficiency in the Board's conduct was cured by their review of the defendant's claim on July 11, 1968. This review was occasioned by the defendant's submitting to the Board, *after* the order to report for induction was mailed, a completed SSS Form 150 which substantiated his conscientious objector claim. The submitted Form 150

was not the one provided by the Local Board but rather was obtained by the defendant from a draft counseling service.

Since the Form was submitted in the "post-induction order" stage, the Board considered itself governed by 32 C.F.R. § 1625.2 which requires that before the Local Board may reopen and consider anew a classification after an induction order has been issued there must be (1) à prima facie showing of entitlement to a new classification; (2) a specific finding of a "change in the registrant's status" since the induction order; and (3) a specific finding that this change resulted from circumstances over which the registrant had no control. On July 11, 1968, after finding no change in defendant's status and that the claim had no merit, the Board decided not to reopen the classification. The practical effect of the Board's decision was to foreclose to the defendant further administrative recourse for following such a refusal to reopen the defendant had no right to a personal appearance or to an appeal. See 32 C.F.R. §§ 1625.11, 1625.13.

■ If the defendant's claim for conscientious objector status had been considered by the Board when he was originally classified, the defendant would have had a right to a personal appearance and an appeal if the Board's decision were adverse to him. However, since the Board was derelict in its duties, the defendant's substantiated claim was considered for the first time in the "post-induction order" stage, a consequence of which the decision by the Board not to reopen carried with it no concomitant rights to a personal appearance or an appeal. In these circumstances, the Government can hardly be heard to argue that the Board's review of the defend-

---

a part of his classification Questionnaire (SSS Form No. 100). The local board, upon request, shall furnish to any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector (SSS Form No. 150)."

15. We note that the Form 150 which the defendant eventually submitted to the

Board was not the same Form which the Board had sent to him. The Board's Form bore the date of its mailing in the legend, whereas the Form submitted by the defendant had a blank legend. (See Finding of Fact Nos. 5, 12).

ant's claim in the "post-induction order" stage cured any deficiency in the Board's conduct. Rather, in our view, the circumstances of the subsequent review served to compound the prejudice already shown the defendant.

Thus, since the evidence is insufficient to sustain a conviction for failure to report for and submit to induction, the motion for judgment of acquittal is granted. See Boswell v. United States, 390 F.2d 181 (9th Cir. 1968); United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968).

The above constitutes our conclusions of law.