**UNITED STATES of America**
v.
**Jack Charles MARSHALL.**
**Cr. No. 70-678.**

United States District Court,
E. D. Pennsylvania.
March 16, 1972.

Louis C. Bechtle, U. S. Atty., Henry J. Horstmann, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Peter L. Gale, Rosenthal & Patti, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

The defendant is charged with failure to submit to induction into the Armed Forces, a duty required of him by the Military Selective Service Act of 1967,[1] as amended, 50 U.S.C.A. App. § 462(a). After a trial without a jury the Court makes the following:

## FINDINGS OF FACT

1. Jack Charles Marshall, the defendant, registered with Local Board No. 31 (hereinafter referred to as Local Board) in Reading, Pennsylvania at age 18, in accordance with the requirements of the Military Selective Service Act.

2. On March 17, 1969, defendant was classified 1A and he did not appeal this classification.

3. On October 8, 1969, the defendant was mailed a questionnaire, Selective Service Form 127, requesting information regarding his current status. Defendant completed the questionnaire and mailed it to the Local Board, although they never received it.

4. The defendant alleged that the questionnaire included the fact that his parents had recently separated and that he was living with his mother.

5. On January 26, 1970, defendant was ordered to report for a physical examination. He was found physically qualified to serve in the Armed Forces.

6. On February 20, 1970, defendant was issued an Order to Report for Induction on March 20, 1970.

7. On March 19, 1970, defendant visited the office of his Local Board. He stated that he had not been previously aware that he may be eligible for a hardship deferment but that Barry Jackson, a caseworker for Family Guidance in Reading, who accompanied defendant in this visit, informed him of this fact. Defendant stated that he desired to be considered for a hardship de-

ferment but that if this were impossible, he requested a postponement of his induction from 30 to 120 days, claiming that his induction would result in extreme hardship to his mother.

8. The defendant met with Mr. Gegenheimer, a member of the Local Board, and Mrs. Hunter, the Executive Secretary, and informed them of this request.

9. Mrs. Hunter prepared a report based on the information that defendant supplied during his visit.

10. Defendant stated that he was living with his mother and six brothers and sisters, ranging in age from 6 to 17 years. His mother was receiving about $120 every two weeks from Public Assistance. She also received $35 per week from his father. Defendant stated that he is now employed by Harold Nelson Associates. His weekly earnings amount to $65 per week and although he has not yet received any pay he intends to give her the proceeds when he does. His last steady job was at Manson Billiard Bar-Bell, which he left in January, 1970. He had been earning $2 an hour but left because his earnings were not commensurate with his workload. Defendant stated that he then worked at odd jobs until his recent employment at Harold Nelson Associates.

11. Mr. Gegenheimer telephoned the other members of the Local Board and read the report prepared by the Executive Secretary. It was agreed not to request postponement of induction. The members agreed to hold a meeting at 1:30 P.M.

12. No meeting was held. When defendant returned that afternoon he was informed that he would have to report for induction the next day. No reasons were placed in defendant's file regarding the rejection of his request.

13. On the morning of March 19, 1970, defendant's mother, accompanied by an Army recruiter, Sergeant Cline,

---

1. The Act was amended by P.L. 92–129 and is now referred to as the Military Selective Service Act. *See* U.S.Code Cong. & Admin.News, p. 2088 (Supp. No. 8, October 20, 1971).

visited the defendant's Local Board. She stated that she would rather have her son in the Army than in jail. She further stated that she was not aware that her son might be eligible for a hardship deferment but admitted that his induction would result in a great hardship to her.

14. The Executive Secretary prepared a report of this meeting and placed it in defendant's Selective Service file marked "Confidential."

15. On March 20, 1970, defendant failed to report for induction.

16. On March 27, 1970, defendant was ordered to report for induction on April 21, 1970.

17. Defendant did not report for induction on April 21, 1970.

18. Defendant was indicted by the Grand Jury for the Eastern District of Pennsylvania for failing to report for induction.

19. Defendant was arraigned before me on February 16, 1971.

20. On April 20, 1971, defendant filed a motion requesting, *inter alia*, the production of documents containing the names and addresses of the members of the Local Board for the purpose of ascertaining whether the Local Board was properly constituted. The United States of America contested the motion on the ground that the addresses of the members of the Local Board are considered to be outside the limits of the Freedom of Information Act and are not discoverable.

21. On April 26, 1971, the Court communicated with both counsel and was informed that an attempt would be made to amicably resolve this controversy without the necessity of a court order. Counsel indicated that they will inform the Court of the status of the motion.

22. The Court never received any further correspondence from counsel requesting that the motion either be acted upon or that it be withdrawn.

23. On the morning of trial and just prior to its commencement, counsel for the defendant filed a motion requesting that the case be remanded to the defendant's Local Board for the purpose of challenging the composition of such Board. In support of its motion the defendant presented the following allegations:

■ On April 21, 1971 defendant filed a motion for discovery seeking, *inter alia*, the names and addresses of the members of the Local Board. The Government refused to divulge such information without an order of the Court. The information was not available to the defendant at his Local Board. Subsequently, the defendant received such information as a result of independent investigation. The information reveals that the Local Board may not have been properly constituted. Since these members refused to reopen and consider anew defendant's classification, the improper constitution of the Local Board was prejudicial to defendant. The holding of United States v. Tobias, 447 F.2d 227 (3rd Cir. 1971) requires that challenges to the composition of a local board must first be presented within the administrative framework of the Selective Service System and not as a defense to a criminal prosecution. In the instant case the defendant could not pursue this challenge before the Local Board in the first instance as the information was not divulged. Defendant requested that the case be remanded to the Local Board in order to comply with the requirement of *Tobias*.

24. Mrs. Hunter, the Executive Secretary of defendant's Local Board, testified that although all members of the Local Board were residents of the county in which the Board had jurisdiction (Berks County) none of them were also residents within the geographical area encompassed by the board's jurisdiction. She stated that the board had been unable to secure individuals to serve as members whose residence satisfied both geographical requirements. Mrs. Hunter further testified that the three other local boards which service the area surrounding Reading, Pennsylvania, and

which are located in the same building as Local Board #31, were composed of some members whose residence satisfied both geographical requirements.

25. The Court denied defendant's motion to remand the case to the Local Board by way of a ruling in open court. We had been led to believe that this was the initial application to the Court for an order on any issue with regard to the question of the composition of defendant's Local Board. We held that there was no justification for this dilatory application and that it was evidence of an attempt by defendant to delay the commencement of trial. We now concede that at the time of this ruling we were not aware that an open motion existed in the record in which defendant's counsel indicated an intent to file such a motion and required certain documents to support it; nor did either counsel direct our attention to this fact.

26. The defendant was then tried before the Court without a jury.

### DISCUSSION

At the outset the Court must reluctantly note that the facts clearly indicate that this case is burdened by an abundance of irregular conduct on the part of all participants to this litigation, commencing from the initial stage of activity within the Local Board and continuing through the trial. We find that we must first determine the legal consequences of such conduct in accordance with the provisions of the Military Selective Service Act of 1967, as amended, 50 U.S.C.A. App. § 451 et seq., and the regulations promulgated thereunder, 32 C.F.R. § 1600 et seq., before we decide the ultimate question of the defendant's guilt or innocence of the charges alleged in the indictment.

The defendant contends, *inter alia*, (1) that the Local Board was required to reopen and consider anew his request for a hardship deferment regardless of the fact that such request was presented after a notice of induction had been mailed; (2) that the Local Board was required to hold a properly constituted meeting and grant defendant an opportunity to make a personal appearance to present this request; and (3) that the Local Board was required to state reasons to be added to the file when it denied his request.

The Government contends, *inter alia*, (1) that the defendant was precluded from presenting this request by virtue of his failure to exhaust his administrative remedies through an appeal of his initial 1A classification; (2) that the Local Board was not required to reopen and consider anew defendant's classification in that the alleged change in circumstances occurred prior to the issuance of an induction order; and (3) that the facts claimed to constitute a hardship, even if true, were insufficient to warrant the granting of a hardship deferment.

In addition, the Court feels compelled to reconsider its denial of defendant's motion to remand the case to the Local Board for an administrative determination as to the legality of the composition of the board. Upon an extensive review of the record we find that our prior ruling may have been in error and that the interests of justice require an exhaustive review of the legal issues presented by that motion at this time. We further find that we must decide this issue at the outset in that a determination that the Local Board was unlawfully constituted would result in invalidating the induction order, United States v. Williams, 317 F.Supp. 1363, 1368 (E.D.Pa.1970), and all actions by the board thereby rendering the other issues moot.

The challenge to the composition of the Local Board is grounded on the fact that although all the members of Local Board 31 were residents of the county in which the board had jurisdiction (Berks County), none of them were also residents of the geographical area served by the board (Finding of Fact No. 24).

The applicable statute is 50 U.S.C.A. App. § 460(b) (3) which states in pertinent part:

. . . each member of any local board shall be a civilian who is a citizen of the United States residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction, . . . [2]

However, the statute, 50 U.S.C.A. App. § 460(b) (1) and (3) also authorizes the President to create and establish local boards within the Selective Service System and to prescribe all necessary rules and regulations regarding the creation and operation of such board. In compliance with this legislative mandate, the President promulgated 32 C.F.R. § 1604.52(c), which was in effect when this Local Board acted upon this defendant, and which provided:

The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction *and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.* (Emphasis supplied).[3]

The legislative history of the original Selective Service Act indicates a strong intent that a registrant was to be judged by his friends and neighbors. In 1940 General Hershey said:

[T]he choice [of who is to serve] is being made by the neighbors of the man, and we think that the thing must be kept simple enough so that the average citizen can see how it works . . . Hearings before the Senate Military Affairs Committee on S. 4164, 76th Cong., 3d Sess. 384 (1940).

It was then thought that the development of civilian local boards was the most efficient and equitable means of effectuating the provisions of the Act. The view was expressed that:

The members of the local boards thus assume a great and important responsibility which they carry out under the continuous observation of all other members of the local community. This in itself is the best assurance both of efficiency and impartiality and justice. 86 Cong.Rec. 11678 (1940) (remarks of Rep. Mott).

It is clear from a reading of the pertinent sections of the statute and regulation that the regulation imposes an additional residence requirement upon members of the local boards, that being the requirement that such members shall also reside, if at all practicable, within the geographical area in which the board has jurisdiction. The Government has repeatedly contended that this *additional residence requirement imposed by the regulation* is discretionary, and that compliance with the *statute*, which only imposes a county-wide residence requirement, is all that is necessary. *See, e. g.,* United States v. Machado, 306 F.Supp. 995, 997 (N.D.Cal.1969).

■ Regulations of the Selective Service System, like all properly autho-

2. 50 U.S.C.A.App. § 460(b) (3) was amended by P.L. 92–129, U.S.Code Cong. & Admin.News, pp. 2088, 2093 (Supp. No. 8, October 20, 1971). However, this provision was not affected by the amendment.

3. President Harry S. Truman, in Executive Order No. 9979, 3 C.F.R. 713, 717 [1944–1948 Comp.], effective July 20, 1948, promulgated the original version of 32 C.F.R. § 1604.52(c). This regulation was amended by President Lyndon B. Johnson in Executive Order No. 11360, 2 U.S.Code Cong. & Admin.News, pp. 3497, 3498 (1967), in order to eliminate the requirement that only male citizens could be board members. It was further amended by President Richard M. Nixon in Executive Order No. 11555, 3 U.S.Code Cong. & Admin.News, p. 6278 (1970), in order to eliminate the requirement that local board members must, if at all practicable, also be residents of the area in which the local board has jurisdiction. 32 C.F.R. § 1604.52(c) now provides:

The members of local boards shall be citizens, male or female, of the United States who shall be residents of a county in which their local board has jurisdiction. . . .

rized administrative rules and regulations, have the force and effect of law, Farmer v. Philadelphia Electric Co., 329 F.2d 3, 7 (3rd Cir. 1964), and courts have held that a failure to comply with such regulations results in a denial of due process. *See,* Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968); Briggs v. United States, 397 F.2d 370 (9th Cir. 1968). However, several circuits have construed 32 C.F.R. § 1604.52(c) as discretionary and sanctioned as valid, actions of local boards whose members only comply with the residence requirements imposed by the statute. *See, e. g.,* Czepil v. Hershey, 425 F.2d 251 (7th Cir. 1970), cert. denied sub nom. Czepil v. Tarr, 400 U.S. 849, 91 S.Ct. 44, 27 L.Ed.2d 87; United States v. Wallace, 435 F.2d 12 (9th Cir. 1970); United States v. Chaudron, 425 F.2d 605 (8th Cir. 1970); *But see,* United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970), where the area residence requirement was held to be mandatory upon the local boards.

■ While the Third Circuit has not decided whether 32 C.F.R. § 1604.52(c) mandates members of local boards to live within the area encompassed by the board's jurisdiction,[4] Judge Masterson of this Court, in a thorough and well-reasoned opinion, has so held, and once it is established that a substantial number of citizens from the area are eligible to serve as board members but are, in fact, not so serving, the usual presumption of regularity which attaches to governmental acts and proceedings is overcome. The burden is then on the government to show that the board was validly constituted by demonstrating that it was impracticable to comply with this additional residence requirement. United States v. Williams, 317 F.Supp. 1363, 1370 (E.D.Pa.1970).

■ We are inclined to apply the rationale of United States v. Cabbage, *supra,* and United States v. Williams, *supra* in finding that 32 C.F.R. § 1604.52(c) imposes a mandatory requirement upon the local boards that they are to be composed of citizens who also reside within the area encompassed by the board's jurisdiction. We further find that deviation from this requirement is permitted only when it has been demonstrated that it was impracticable to so comply.

We consider any rule that compliance with the statute is all that is required as contradicting the intent of the President, as exhibited by his promulgating this regulation regarding the additional residence requirement; and as negating those cases which have held that the requirements of the regulations are a necessary element of due process.[5] It would further result in totally obliterating the effect of the additional language included therein, and we will not sanction such a result without strong evidence of any such executive or legislative intent.[6]

---

4. The Third Circuit was presented with this precise issue in United States v. Smith, 447 F.2d 496 (3rd Cir. 1971). However, in a per curiam opinion, the Third Circuit chose not to rule on this specific question but, in affirming defendant's conviction, relied on its holding in United States v. Tobias, 447 F.2d 227 (3rd Cir. 1971), which requires that this issue must first be submitted for an administrative determination to the local board before it can be asserted as a defense to a criminal prosecution.

5. Some courts have required a showing of actual prejudice before holding that a regulation violates due process. *See,* United States v. Machado, *supra,* 306 F.Supp. at 998. However, given the broad discretionary powers of the local boards, we are unable to say whether defendant would have been classified differently by a properly constituted board. The intent of the regulation and the seriousness with which it was drafted should outweigh the absence of evidence of prejudice in this specific instance. *See,* United States v. Dale, 304 F.Supp. 1278, 1282 (D.N.H.1969).

6. President Nixon exhibited such an intent when he promulgated Executive Order No. 11555, 3 U.S.Code Cong. & Admin.News, p. 6278 (1970) which deleted this additional requirement, but which we again note, has no application to this case. We find that this action by the President further supports our position that prior

Challenges to the composition of local boards have previously been asserted as a defense to a criminal prosecution and not subject to the requirement of exhaustion of administrative remedies. *See*, United States v. Williams, *supra*, 317 F.Supp. at 1366–1367; United States v. Lemke, 310 F.Supp. 1298 (N.D.Cal.1969). However, United States v. Tobias, 447 F.2d 227 (3rd Cir. 1971) now requires that such challenges must initially be asserted before the local boards for an administrative determination before they may be asserted as a defense to a criminal prosecution. The rationale underlying *Tobias* is that:

> There is patently a "compelling governmental interest" in placing before the Selective Service System a challenge to the constitution of one of its local boards. . . . And since the statutory apparatus for establishing local boards is vested within the system itself, it is there that such a challenge must usually first be brought. *Id.* at 229.

■■ Although *Tobias* precludes our determining the merits of whether Local Board 31 was unlawfully constituted, we find that a motion to remand the issue to the Local Board for an administrative determination of its merits, without prejudice to the refiling of criminal charges if the board's composition is found to be lawful, is both permitted and consistent with its rationale where (1) a prima facie showing of the board's unlawful composition has been presented and (2) no evidence has been introduced which demonstrates that the defendant has wilfully withheld the assertion of this defense until trial. Both of these elements are present here.

■■ The Court finds that it can take judicial notice of the fact that the area encompassed by Local Board 31 is inhabited by a substantial number of qualified citizens who are eligible and willing to serve and reference to the population data of the United States Bureau of the Census will substantiate this fact. United States v. Beltran, 306 F.Supp. 385, 387 (N.D.Cal.1969). This conclusion is further supported by the fact that the three other local boards which serve the area surrounding Reading, Pennsylvania were composed of some members whose residence satisfied both geographical requirements (Finding of Fact No. 24). Once this has been established the defendant has sustained a prima facie case of unlawful composition and the burden then shifts to the government to prove that compliance with the regulation was impracticable. United States v. Williams, *supra*, 317 F.Supp. at 1370.

We further find that there was no deliberate attempt by the defendant to withhold the assertion of this defense until the commencement of trial. Knowledge of the addresses, a prerequisite to advancing this defense, is within the possession of the board members, and 32 C.F.R. § 1606.62(c) severely restricts its access.[7] In addition, even after the indictment, the Government has refused to divulge this information and to this date has not done so.

■ We further note that Selective Service Form 110, the Notice of Classification, which was sent to the defendant, informs the registrant of his right to appeal his classification but no mention is made of the registrant's right to challenge the composition of his local board. We find that to require the registrant to raise this issue at the time he was initially classified or be forever foreclosed from doing so would be un-

---

to its amendment, the regulation imposed a mandatory duty upon the local boards to comply with the additional residence requirement.

7. [T]he home addresses and other personal data concerning the officials designated in paragraph (b) of this section [board members] will not be released unless (1) the person to whom the data relates consents to such release or (2) the board chairman determines in writing, after consultation with the person to whom the data relates, that disclosure would not harm such person, and would not constitute a clearly unwarranted invasion of his personal privacy.

duly harsh and remove yet another procedural safeguard from a system already substantially stripped of traditional due process guarantees. It would require registrants, proceeding without the benefits of counsel,[8] to comprehend the procedural intricacies of a technical statute which few lawyers completely understand. Realistically, registrants rely on able defense lawyers to assert due process arguments, such as the one advanced here, at trial. *See*, United States v. Weaver, 336 F.Supp. 558 (E.D.Pa.1972) (Lord, III, Ch. J.). And only where evidence of a knowing or deliberate attempt to evade the administrative proceedings has been presented should this benefit be foreclosed. We therefore find that utilizing the motion to remand achieves a proper balance between the due process rights of registrants to have their contentions considered by the proper authorities, and the administrative protection afforded the Selective Service System by *Tobias* in that it is to be given the initial opportunity to consider the legality of the composition of its local boards.

In applying these principles to the facts of this case, we conclude that defendant's motion to remand was well supported and merited our approval. We regret that counsel's dilatory efforts in keeping the Court informed of the status of this case throughout its development has resulted in the necessity of this admission. However, having already concluded the trial we are now precluded from simply remanding the issue to the Local Board without deciding the ultimate question of the defendant's guilt or innocence, as we initially may have done. And yet we are also precluded by *Tobias* from deciding the issue of the legality of the Local Board's composition on its merits. What is clear is that it would be unreasonable and unjust for this defendant to suffer a felony conviction under these circumstances.

We find the defendant not guilty of the charges in the indictment. We further find that all questions regarding this defendant's classification, including the merits of his hardship claim, should be presented to and considered by Local Board 31 in accordance with proper administrative procedures. The Court considers this result to be in the best interest of justice and protective of the rights of the defendant as well as insuring the orderly administration of the Selective Service System.

---

8. *See*, 32 C.F.R. § 1624.1(b) which provides in pertinent part:

[N]o registrant may be represented before the local board by anyone acting as attorney or legal counsel.